# COWLEY *v.* NORTHERN PACIFIC RAILROAD COMPANY.

APPEAL FROM THE CIRCUIT COURT OF THE UNITED STATES FOR THE DISTRICT OF WASHINGTON.

No. 67.   Argued and submitted October 22, 1895. — Decided November 18, 1895.

In a proceeding — commenced in a court of the State of Washington, under the statutes of that State, by filing a petition to set aside a judgment charged to have been obtained there through fraud and collusion between the plaintiff's attorney of record and the defendant's attorney of record,

and against the plaintiff's instructions touching a pretended compromise — and removed on the defendant's motion to the Circuit Court of the United States for that Circuit, it is *Held*, that the cause, although in the nature of a bill in equity, remained, so far as the rights of the plaintiff were concerned, a special proceeding under the Territorial statute, and that the powers of the Federal court, in dealing with it, were gauged not merely by its general equity jurisdiction, but by the special authority given the State courts by statute.

Federal courts may enforce on their equity or admiralty side new rights or privileges conferred by State or Territorial statutes as they may enforce new rights of action, given by statute, upon their common law side.

The averment in such a petition that the case was a case of fraud within the provisions of the statute of the State was sufficient to give the Federal court jurisdiction to act under the statute, and such jurisdiction could not be defeated by proof that no fraud was actually committed; but the plaintiff would be entitled to recover if he were able to show that he never assented to the pretended compromise, or that he repudiated it, and revoked the authority of his attorneys.

The case having been removed to the Federal court upon the defendant's petition, it does not lie in its mouth to claim that that court had no jurisdiction of the case, unless the court from which it was removed had no jurisdiction.

THIS was a proceeding originally instituted in the District Court of the fourth judicial district of Washington Territory, under a territorial statute, to set aside a certain judgment rendered in a case brought by the Railroad Company against the appellant, Cowley, in the same court.

The facts of the case were substantially as follows: In 1886, the Railroad Company began an action against the appellant to recover possession of 120 acres of land within the limits of Spokane Falls. In answer to the complaint in that action, Cowley set up a contract of purchase of the land between himself and the Railroad Company, alleging that he had complied or was ready to comply with the terms of his contract, had gone into possession of the land pursuant thereto, and had made valuable improvements thereon to the amount of $1500, and demanded a specific performance. This answer or counter claim was denied by the Railroad Company in its reply, and the case being thus at issue, was referred to a referee to take testimony. The case was set for hearing by the referee on May 10, 1888, and was afterwards adjourned to May 11.

On the day originally set for the hearing, the land agent of the Railroad Company made an oral offer to appellant's attorneys, who were to receive one-quarter of the proceeds of the action, to compromise the suit by the payment to appellant of $8000 in cash, and the conveyance of seven and one-half acres of the land in question, the company to retain the remainder of the land. This offer the appellant's attorneys, Messrs. Ganahl & Hagan, advised him to accept. There was some dispute as to whether it was actually accepted or not, but the court found that it was. The allegation of the petition in this connection is " that after full and mature consideration of said proposition, said Cowley decided to reject the same, and so notified his attorneys, Messrs. Ganahl & Hagan, and being very anxious about having said cause prosecuted to a final and successful issue in the courts, and being desirous of having his case tried by attorneys having confidence in the merits thereof, he determined to associate other counsel with said Ganahl & Hagan in the defence of said cause, and so notified them, asking that such other counsel should take an equal share with said Ganahl & Hagan in the conduct and defence of said cause."

If the proposition was accepted, as claimed by the Railroad Company, and found by the court, there is no doubt that it was subsequently repudiated by Cowley, who informed his attorneys that he was dissatisfied with it, and desired to employ other counsel with them, to which they refused to consent, except upon payment of their fees. There is no doubt that appellant also telegraphed the general land agent of the Railroad Company that he must have additional time to consider the proposition of compromise, to which the land agent replied that there was nothing to consider, the settlement having been made and the papers and money sent. The president of the First National Bank of Spokane Falls, to whom the money and papers were sent by the Railroad Company on May 16, took them to the office of appellant's attorneys and informed them that, on the execution of a quitclaim deed by appellant and his wife, the money would be paid over. But it seems the appellant refused to execute the deed, and has

ever since refused, and the money has ever since been in the hands of the president of the bank, ready to be turned over.

On the following day, May 17, appellant wrote to the attorney of the Railroad Company, and to its general land agent, that the offer was not accepted; that Ganahl & Hagan were no longer his attorneys; and that all further communication should be made through his attorneys, Messrs. Blake & Ridpath. These letters were received about May 18, and were answered to the effect that until other attorneys were regularly substituted by an order of court, Messrs. Ganahl & Hagan would still be recognized by the company as appellant's attorneys. On the same day on which appellant wrote these letters, he also wrote Ganahl & Hagan stating that he discharged them as his attorneys and that he had employed other counsel, to which they made reply that they demanded $4000 for their fee, and would take nothing less, and that they had, on motion, set the case down to take testimony on Monday, May 21. On May 18, the referee set down the case to take testimony on May 21, and notified the attorneys for the respective parties. Appellant telegraphed the attorney of the Railroad Company that he could not go on upon that day, as he had employed new counsel, to which the attorney replied that he had made no arrangements for taking testimony, having supposed it would be unnecessary, and that at any rate he could not go on until the general land agent of the company was able to attend.

On May 21, which was the first day of the May term of the court, the attorney for the Railroad Company, and Ganahl & Hagan as attorneys for Cowley, entered into a stipulation to the effect that the case had been settled and compromised on the terms above mentioned, and that judgment should be entered for the plaintiff, the said Railroad Company, for the restitution of the premises demanded in the complaint; denying the relief prayed in defendant's answer, with costs against the plaintiff. Ganahl & Hagan also executed a receipt for the papers and money then in the First National Bank, though, in fact, they never received the money, which is still in the bank on deposit. Upon this stipulation and receipt, judgment

was accordingly entered that the plaintiff Railroad Company recover of the defendant the possession of the premises described in the complaint; that a writ of restitution issue; that the relief prayed in defendant's answer be denied; and that plaintiff pay the costs. Defendant did not know that the stipulation had been made, or the receipt given, or judgment entered, until it had been done, and upon hearing of it, he protested against it.

Thereafter, and without taking any further proceeding in the original suit, appellant instituted this proceeding to set aside the judgment in the former case, upon the ground of fraud and collusion between Ganahl & Hagan and the attorney for the Railroad Company, and as being entered without authority. The proceeding was begun in the District Court of the Territory, and was afterwards proceeded with in the Superior Court of Spokane County, in the State of Washington. It was then removed into the Circuit Court of the United States, which rendered a decree dismissing the bill, from which decree Cowley took this appeal. The opinion of the Circuit Court is reported in 46 Fed. Rep. 325.

*Mr. R. B. Blake* for appellant. *Mr. Lewis Abraham, Mr. George Turner, Mr. Frank Graves,* and *Mr. W. M. Ridpath* were with him on his brief.

*Mr. A. H. Garland* and *Mr. William J. Curtis* for appellee submitted on their brief.

Plaintiff shows no case for the interposition of a court of equity.

The principles governing courts of equity, where their aid is invoked to enjoin or set aside judgments at law, are well settled. In the leading case of *Marine Ins. Co. of Alexandria v. Hodgson,* 7 Cranch, 332, 336, Chief Justice Marshall stated the law in language which has often been quoted and relied upon, as follows: "Without attempting to draw any precise line to which courts of equity will advance, and which they cannot pass, in restraining parties from availing themselves of

judgments obtained at law, it may safely be said that any fact which clearly proves it to be against conscience to execute a judgment, and of which the injured party could not have availed himself in a court of law, or of which he might have availed himself at law, but was prevented by fraud or accident, unmixed with any fault or negligence in himself or his agents, will justify an application to a court of chancery. On the other hand, it may with equal safety be laid down as a general rule that a defence cannot be set up in equity which has been fully and fairly tried at law, although it may be the opinion of that court that the defence ought to have been sustained at law. In the case under consideration, the plaintiffs ask the aid of this court to relieve them from a judgment on account of a defence, which, if good anywhere, was good at law, and which they were not prevented, by the act of the defendants or by any pure and unmixed accident, from making at law." See also *Hendrickson* v. *Hinckley*, 17 How. 443 ; *Crim* v. *Handley*, 94 U. S. 652; *Brown* v. *County of Buena Vista*, 95 U. S. 157.

It follows from this that wherever the party seeking the aid of a court of equity could, by any means, have obtained in a court of law, and in the original action, the relief which he seeks, equity will not interfere, but will leave him in the position in which he has placed himself by his failure to avail himself of the means of relief which were open to him in the original action.

These rules apply not only to such grounds of complaint as may arise from the party's failure to make, or to obtain proper advantages of, defences or causes of action in the suit at law, but also to incidental matters relating to the conduct of the action which have affected the result. If relief might have been had in a court of law, in respect of any of these matters, it will be a fatal objection to the bill, and equity will no more give the plaintiff the relief which he might have obtained by motion in the original action than it will enable him to avail himself of defences or claims which he might there have set up. This rule was forcibly stated by Lord Chancellor Redesdale in *Bateman* v. *Willoe*, 1 Sch. & Lef. 201.

See also *Hendrickson* v. *Hinckley*, 17 How. 443; *Wilkinson* v. *Rewey*, 59 Wisconsin, 554; *Bibend* v. *Krentz*, 20 California, 110; *Embry* v. *Palmer*, 107 U. S. 3.

In *White* v. *Crow*, 110 U. S. 183, 188, where an appeal was filed to set aside a judgment to enjoin the execution of a deed by the sheriff upon a sale under a judgment which was alleged to be void, upon the ground that it was entered before the time to answer had expired, and upon consent of a person who acted as agent for the defendant, but who, it was asserted, was not authorized so to act, the court, by Mr. Justice Woods, said : " But if he was not such agent, the question arises whether the rendition of the judgment before the time for filing defendant's answer had expired renders the judgment void. We are of opinion that it does not; that its rendition was simply erroneous, and nothing more. The court having jurisdiction to render the judgment, and having rendered it, the law, when the judgment is collaterally attacked, will make all presumptions necessary to sustain it. *Grignon's Lessee* v. *Astor*, 2 How. 319. The defendant being in court, was bound to take notice of its proceedings, and might have corrected the error at any time during the term. It did not move to set the judgment aside. It filed no answer. The presumption, therefore, which the law makes is either that it consented to a submission of the case before the time for answer expired, or that it subsequently waived the error by not seeking to correct it."

If the rules laid down in the cases cited be applied to the case at bar, it will be seen that appellant shows no ground on which a court of equity can interfere.

Mr. Justice Brown, after stating the case, delivered the opinion of the court.

The referee, to whom this case was referred by the district territorial court, found, as a matter of fact, that Cowley did not directly authorize Ganahl & Hagan to enter into the stipulation and to consent to judgment, but that the stipulation and judgment were only incidental to the contract of

settlement and substantially. embodied in the same terms, and
that by reason of such settlement, and the general powers of
attorney therein, and the power of attorney executed and
given to Hagan, and their general powers as attorneys in the
case, they were authorized to act in the manner they did, not-
withstanding their agency was revoked and notice given to
the Railroad Company. He also found, as conclusions of law,
that the plaintiff was not entitled to the relief asked, and that
the order and decree in the original case should be declared
to stand and remain in force.

On August 6, 1889, motion was made by Cowley to set aside
this report, defendant making a counter motion to confirm
it, except as to certain findings of fact. Washington was
admitted as a State by proclamation made November 11, 1889.
The case was transferred to the superior court of Spokane
County upon the admission of the State, and on January 6,
1890, was removed, upon the petition of the Railroad Com-
pany, to the Circuit Court of the United States for the
District of Washington, in which court it appears to have been
docketed as a case in equity. The motion to set aside the
report of the referee coming on to be heard before the Circuit
Court, that court struck out the paragraph of the referee's
finding above cited, and found that the agreement for a com-
promise was "only an understanding between the parties as
to the terms upon which the contract would be concluded, and
that there was not a contract actually made and concluded."
It further found that this agreement, even if it were binding
in law and equity upon Mr. Cowley, had never been executed
or carried into effect ; that it had never been performed on
defendant's part so as to entitle it to any judgment in the
district court in the original case ; that the stipulation signed
by Ganahl & Hagan, as attorneys for Cowley, was not only
not authorized, but was made in defiance of his known wishes
in the matter, and hence that the judgment upon such stipula-
tion was improperly rendered, and was unjust.

It was found, however, that the proceeding was in equity,
and that it was not according to equity practice to decree that
a judgment be vacated or annulled, or to act directly upon the

case in which an unjust or void judgment has been rendered. That the plaintiff should have applied by petition or motion in the original case, and that, his remedy at law being adequate, the suit must be dismissed.

At the time this proceeding was instituted, the following provisions of the Territorial Code of Washington were in effect:

Section 436. "The district court in which a judgment has been rendered, or by which, or the judge of which, a final order has been made, shall have power after the term at which such judgment or order was made to vacate or modify such judgment or order.

" 1. By granting a new trial for the cause, within the time and in the manner, and for any of the causes prescribed by the sections relating to new trials.

" 2. By a new trial granted in proceedings against defendant served by publication only as prescribed in section sixty-seven.

" 3. For mistakes, neglect, or omission of the clerk, or irregularity in obtaining a judgment or order.

" 4. For fraud practised by the successful party in obtaining the judgment or order," etc.

Section 437 provides that "when the grounds for a new trial could not with reasonable diligence have been discovered before, but are discovered after the term at which the verdict, report of referee, or decision was rendered or made, the application may be made by petition filed as in other cases, not later than the second term after the discovery, on which notice shall be served and returned, and the defendant held to appear as in an original action." This manifestly refers to applications under the first and second subdivisions of section 436.

Section 438 requires that " the proceedings to correct mistakes or omissions of the clerk, or irregularity in obtaining the judgment or order, shall be by motion," etc. This evidently refers to the third subdivision of section 436.

Section 439 requires that "the proceedings to obtain the benefit of subdivisions four . . . shall be by petition, veri-

fied by affidavit, setting forth the judgment or order, the facts or errors constituting a cause to vacate or modify it, and the facts constituting a defence to the action, if the party applying was a defendant; and such proceedings must be commenced within one year after the judgment or order was made unless the party entitled thereto be a minor or person of unsound mind, and then within one year from the removal of such disability."

The judgment in the original case was entered upon May 21, 1888, and the petition in this case was filed on June 26 of the same year. It does not appear, however, whether it was at the same or a subsequent term of the District Court.

Section 440 provides that "in such proceedings the party shall be brought into court in the same way, on the same notice as to time, mode of service, and mode of return, and the pleadings shall be governed by the principles and the issues be made up by the same form, and all the proceedings conducted in the same way, as near as can be, as in an original action by ordinary proceedings, except that the defendant shall introduce no new cause, and the cause of the petition shall alone be tried."

Other sections provide that the judgment shall not be vacated until it is found that there was a valid defence or a valid cause of action in the original suit, and that all liens and securities obtained under it shall be preserved to the modified judgment. That the court may first try and decide upon the grounds to vacate or modify the judgment before deciding upon the validity of the defence or cause of action. That an injunction may issue suspending proceedings and prescribing the form of judgment to be finally entered.

The petition was in the form of an independent complaint by Cowley against the Northern Pacific Railroad Company, setting forth certain facts which he alleged made it a fraud upon his rights for his attorneys to agree to the judgment which was entered up in the original case against himself, and praying that the decree in that case be set aside, that he be allowed to defend the action, and that he have judgment for costs. The complaint appears to have been drawn in sub-

stantial conformity with the Territorial statute, although it is not entitled in the original cause, but has an independent entitling of its own.   The defendant appeared in answer to a summons issued under section 440, demurred to the complaint, and, upon the demurrer being overruled, filed an answer, to which plaintiff replied as in an original action.   The difficulty in the case seems to have arisen from the fact that, after the removal of the case to the Circuit Court of the United States, it was treated as a suit in equity, subject to all the limitations attaching to the equitable jurisdiction of the Federal courts, instead of a special proceeding to obtain the benefit of the statute; the court holding that the assistance of equity could not be invoked so long as the remedy by motion existed.   The court declined to consider it as a proceeding under the code, saying that the rights of the parties and the limitations of their rights, in such a statutory proceeding, were quite different from the rights and limitations and the rules which must govern the decision in a suit in equity, and that the effect of a decision or judgment was entirely different.

It would appear, however, in view of section 440 of the Territorial code, providing that the parties shall be brought into court in the same way, on the same notice as to time, mode of service, and mode of return, that the pleadings should be governed by the principles, and the issues made up in the form, and all the proceedings conducted as in an original action by ordinary proceedings, that there was no impropriety in filing this petition or complaint as an original proceeding, or conducting the case in the ordinary method.

In the case of *Gaines* v. *Fuentes*, 92 U. S. 10, which was an action to annul an alleged will, brought under the laws of Louisiana, in the District Court of the Parish of Orleans, and removed to the Circuit Court of the United States, it was held that the suit was in effect an action between parties; and that the Federal court had jurisdiction.   It was said that if the suit could be maintained in a State court, it might also be maintained by original process in a Federal court, where the requisite diversity of citizenship existed.

In the subsequent case of *Barrow* v. *Hunton*, 99 U. S. 80, a

petition was filed in the same State court of Louisiana, praying for a decree of nullity of a judgment recovered against the petitioner, setting forth as his grounds for such relief that the judgment complained of was void, because it was founded on a default taken, and no lawful service of the petition and citation in the suit had ever been made upon the petitioner. This case was also removed to the Circuit Court, where plaintiff, by leave of the court, amended his petition to conform to the equity practice, converting it into a bill in equity containing substantially the same averments and praying the same relief. It was said by Mr. Justice Bradley, in delivering the opinion of the court, that the question presented was whether the proceeding was a separate suit, or a supplementary proceeding so connected with the original suit as to form an incident to it, and substantially a continuation of it. "If the proceeding is merely tantamount to the common-law process of moving to set aside a judgment for irregularity, or to a writ of error, or to a bill of review, or an appeal, it would belong to the latter category, and the United States court could not properly entertain jurisdiction of the case." "On the other hand," said he, "if the proceedings are tantamount to a bill in equity to set aside a decree for fraud in the obtaining thereof, then they constitute an original and independent proceeding, and according to the doctrine laid down in *Gaines* v. *Fuentes* the case might be within the cognizance of the Federal courts." "In the one class there would be a mere revision of errors and irregularities, or of the legality and correctness of the judgments and decrees of the State courts, and in the other class, the investigation of a new case arising upon new facts, although having relation to the validity of an actual judgment or decree, or of the party's right to claim any benefit by reason thereof." As the judgment complained of was sought to be impeached simply because the defendant had never been lawfully summoned, and the decree was taken by default against him, it was held that the proceeding was one that affected the mere regularity of the judgment. "In the common-law practice it would have been a motion to set aside the judgment for irregularity, or a writ of error *coram vobis*." It

was further said that, although the fact that the action of nullity can only be brought in the court that rendered the judgment, as in the present case, was entitled to some weight in determining the question, the court was not disposed to allow this consideration to operate so far as to make it an invariable criterion of the want of jurisdiction in the courts of the United States. " If the State legislatures could, by investing certain courts with exclusive jurisdiction over certain subjects, deprive the Federal courts of all jurisdiction, they might seriously interfere with the right of a citizen to resort to those courts. The character of the cases themselves is always open to examination for the purpose of determining whether, *ratione materia*, the courts of the United States are incompetent to take jurisdiction thereof. State rules on the subject cannot deprive them of it. The classification of the causes of nullity in the Louisiana Code into causes relative to form and those relative to the merits is nearly coincident with the classification above suggested, of cases which are and cases which are not cognizable in the courts of the United States. Causes of nullity relating to form would fall in that class of cases which could not be brought in these courts or be removed thereto. The present case is one of that character."

The distinction between the two cases above cited is, that in the latter case the judgment was impeached for a matter of form, and in the former case for the falsity and insufficiency of the testimony, upon which the will was admitted to probate — in other words, for a fraud connected with the probating of the will. The case under consideration, being for an alleged fraudulent practice on the part of the attorneys, falls obviously within the class of cases of which *Gaines* v. *Fuentes* rather than *Barrow* v. *Hunton* is an example. So far as the right of the court to deal with this petition is concerned, it makes no difference that the court found that there was no fraudulent conduct on the part of the attorneys, since the petition averred a case of fraud within the fourth subdivision of section 436. This was sufficient to give the court jurisdiction to act, and such jurisdiction would not be defeated by proof that no fraud was actually committed; and the plaintiff

would still be entitled to recover, if he were able to show that he never assented to the compromise, or repudiated it, and revoked the authority of his attorneys. In this particular, the case resembles one wherein the plaintiff claims an amount sufficient to give the Circuit Court jurisdiction, but fails to prove such amount. If the claim be made in good faith, the court does not lose jurisdiction, but may proceed and enter judgment for the amount actually due.

But while, after the removal of the case to the Circuit Court of the United States, it might properly be docketed and tried by the court as an equity suit, it still remained, so far as the rights of the plaintiff were concerned, a special proceeding under the Territorial statute ; and the powers of the court in dealing with it were gauged, not merely by its general equity jurisdiction, but by the special authority vested in its own courts by the statutes of the Territory. Had the case never been removed to the Circuit Court, it would have proceeded in the State court as a special proceeding under the Territorial statute, and we are of opinion that, upon its removal to the Circuit Court, petitioner lost no right to which he would have been entitled had the case not been removed. Even if it were treated as in form a bill in equity, the right of the complainant would be gauged as well by the statute under which the bill was filed, as by the general rules of equity jurisprudence. If any action or proceeding in a State court were subject to be defeated or impaired by one of the parties exercising his statutory right to remove it to a Federal court, no one would be safe in instituting such a proceeding in any case wherein, by reason of diversity of citizenship or otherwise, it might be subject to removal. While the Federal court may be compelled to deal with the case according to the forms and modes of proceeding of a court of equity, it remains in substance a proceeding under the statute, with the original rights of the parties unchanged.

Although the statute of a State or Territory may not restrict or limit the equitable jurisdiction of the Federal courts, and may not directly enlarge such jurisdiction, it may establish new rights or privileges which the Federal courts may

enforce on their equity or admiralty side, precisely as they may enforce a new right of action given by statute upon their common law side. Thus in *Ex parte McNiel*, 13 Wall. 236, a statute of the State of New York giving to the pilot, who first tendered his services to a vessel, and was refused, a right to half pilotage, was held to be enforceable upon the admiralty side of the District Court. See also the cases of *Broderick's Will*, 21 Wall. 503, 520, and *Clark* v. *Smith*, 13 Pet. 195, 203. So, in *Reynolds* v. *Crawfordsville Bank*, 112 U. S. 405, a bill in equity under a statute of Indiana, which averred that a deed was void upon its face, was held sufficient to support the jurisdiction of the Circuit Court of the United States in that district, to quiet the title of the complainant as against such deed, although courts of equity had generally adopted the rule that a deed void upon its face does not cast a cloud upon the title, which a court of equity will undertake to remove. It was also said in *Davis* v. *Gray*, 16 Wall. 203, 231, that "a party by going into a national court does not lose any right or appropriate remedy of which he might have availed himself in the State courts of the same locality. The wise policy of the Constitution gives him a choice of tribunals." Other cases to the same effect are *Holland* v. *Challen*, 110 U. S. 15; *Marshall* v. *Holmes*, 141 U. S. 589; *Johnson* v. *Waters*, 111 U. S. 640; *Arrowsmith* v. *Gleason*, 129 U. S. 86.

The case having been removed to the Circuit Court upon petition of defendant, it does not lie in its mouth to claim that such court had no jurisdiction of the case, unless the court from which it was removed had no jurisdiction.

As the merits of the case, though appearing upon the record, were not argued by counsel, the decree will be

*Reversed, and the case remanded for further proceedings in conformity with this opinion.*