## JAMES P. WITHEROW CO. v. DE BARDELEBEN COAL & IRON CO.

(Circuit Court of Appeals, Fifth Circuit. February 6, 1900.)

### No. 824.

1. CONTRACTS—CONSTRUCTION.

Plaintiff contracted to build two blast furnaces for defendant, and to furnish five boilers of a designated pattern, which he guarantied sufficient for the entire plant. The five boilers furnished being insufficient, plaintiff furnished three more; and, it then appearing that still more would be required, a supplemental contract was entered into, by which he agreed to furnish two additional batteries, of two boilers each, at his own cost, if both were required, but the contract providing that if one of such batteries should prove sufficient, with those previously erected, defendant should pay $8,000 for the last battery, or it might elect not to retain it, in lieu of such payment. *Held*, that plaintiff could in no event recover more than $8,000 upon such supplemental agreement, even if able to show that neither of the additional batteries furnished thereunder were required to fulfill his former contract; the necessity for one, at least, of such batteries being conceded in the making of the second contract.

2. APPEAL—REVIEW—RULINGS ON MOTION FOR NEW TRIAL.

Rev. St. § 914, requiring circuit and district courts of the United States to conform, as near as may be, in civil actions at law, to the practice, pleadings, and form of procedure existing in the state courts, has no application to procedure on appeal or writs of error; and the settled rule of the federal courts that a ruling on a motion for a new trial is discretionary, and not reviewable on a writ of error, is not affected by a state statute providing for appeals from such rulings.

In Error to the Circuit Court of the United States for the Southern Division of the Northern District of Alabama.

John F. Martin, for plaintiff in error.

Walker Percy and W. I. Grubb, for defendant in error.

Before PARDEE, McCORMICK, AND SHELBY, Circuit Judges.

SHELBY, Circuit Judge. On March 31, 1886, James P. Witherow made an agreement with the De Bardeleben Coal & Iron Company to

erect for it two blast furnaces. The details of the contract and specifications are not material. It is, however, important to note that Witherow agreed to furnish "five water-tube boilers, Heine patent, guarantied sufficient for entire plant." After one of the furnaces was in operation, some doubt was expressed by the De Bardeleben Coal & Iron Company as to whether the five water-tube boilers would be sufficient to run the entire plant when finished, and thereupon Witherow furnished one extra boiler of the Heine patent; and later, at the request of the De Bardeleben Coal & Iron Company, Witherow delivered to it two other extra-large boilers, Heine patent, in addition to the six boilers already furnished. After Witherow had furnished the eight boilers as stated, and while he was erecting the last two of them, it still appearing that the boiler power was not sufficient, the following contract was executed by Witherow:

"Bessemer, Ala., Nov. 2d, 1888.

"Whereas, the boiler power furnished by James P. Witherow to the De Bardeleben Coal and Iron Company has not been found sufficient for the entire plant described in his contract with them, dated 31st March, A. D. 1886, as guarantied therein: and whereas, James P. Witherow is now erecting an additional battery at said furnace plant, of the same pattern, but of size L, and of somewhat different construction: Now, I, the said James P. Witherow, agree to furnish two other additional batteries, similar in size and construction to the additional battery above referred to as now being erected at such furnace plant. It being understood that if both of such two additional batteries, with the rest of the boiler power furnished, are found necessary to supply sufficient steam for the entire plant described in such contract, with one battery left always idle for necessary cleaning and repairs, then I am to pay the entire cost of such additional batteries. If, however, one of the additional batteries herein stipulated for be found sufficient for the purposes above described, then the De Bardeleben Coal and Iron Company is to pay me $8,000 for the second additional batteries. The two additional batteries herein provided to be completed and in position within sixty days from this date, provided the foundations for the same are ready to receive them. In case of disagreement between myself and the said De Bardeleben Coal and Iron Company as to whether the said additional battery is necessary or not, then the matter to be referred to some third party, to be mutually selected, and his decision to be final. If the second of the additional batteries above referred to prove satisfactory to the De Bardeleben Coal and Iron Company, they have the right to cancel this agreement, as to the third additional battery, without cost to them, if they so elect.

"[Signed]                                        James P. Witherow."

Each battery named in the contract consisted of two boilers. Witherow delivered the four additional boilers in conformity with this contract, making, in all, twelve boilers that he furnished. This suit is brought to collect pay for the last four boilers. The plaintiff company, which has become the successor of James P. Witherow, and the owner of the claim, contends that it is not necessary to use the four boilers last delivered in order to successfully operate the plant. The plaintiff therefore sues for $16,000, the value of the four boilers. The defendant in error contends that all the boilers furnished were necessary to operate the plant. These contentions make the issue of fact in the case, on which much evidence was offered by each party. Whether or not these four boilers last furnished were necessary to supply sufficient steam to operate the entire plant to its reasonable capacity, leaving two idle for use while cleaning and repairing, was the one question of fact for the jury. The plaintiff in-

sisted that the contract should be so construed that, if the jury an-swered this question in the negative, it was entitled to receive $16,000; but the trial judge construed the contract to mean that the plaintiff in no event could recover on the contract more than $8,000. The circuit court (Judge Toulmin presiding) instructed the jury on this point as follows:

"Witherow entered into an agreement with the defendant to deliver to it (the defendant) four other and additional boilers, which agreement was in writing, and dated November 2, 1888, and which is in evidence before you. In that agreement Witherow states, in substance, that the boiler power fur-nished by him had not been found sufficient for the entire plant described in his former contract, as he had guarantied therein; and he agrees to furnish two other additional batteries, which, it has been shown, meant four additional boilers, and stipulates that if both such two additional batteries (in other words, four additional boilers), with the rest of the boiler power furnished, are found neces-sary to supply sufficient steam for the entire plant described in the original contract, with one battery (that is, two boilers) left always idle for necessary cleaning and repairs, then Witherow would pay the entire cost of such addi-tional boilers, but if one of the additional batteries (that is, two boilers) stipu-lated for be found sufficient for the purpose described (that is, sufficient to sup-ply steam for the entire plant), then the defendant should pay him $8,000 for two boilers. In the recital of this agreement, Witherow speaks of an addi-tional battery (two boilers) that he was then erecting at the furnace plant, and then goes on and agrees to furnish two other additional batteries, or four additional boilers, and, in the winding up of the agreement, says that if the second of the additional batteries above referred to proved satisfactory to the defendant, the defendant had the right to cancel the agreement as to the third additional battery, without cost, if he so elected. My construction of that clause is that Witherow was referring to all three of the additional batteries mentioned in that agreement, and when he says, 'If the second of the addi-tional batteries above referred to proved satisfactory,' etc., he had reference to the first of the two additional batteries which he then and there agreed to furnish, and, if they proved satisfactory to the defendant, the defendant could, at its election, cancel the agreement to pay the $8,000 for the other and last additional battery referred to, and which Witherow had stipulated to furnish, —in other words, that the defendant had the right to relieve itself of paying $8,000 for the two boilers which it might have no need for. Now, you will observe that Witherow agreed to furnish four additional boilers, and stipulated that if all of them, with the rest of the boiler power already furnished, were necessary to supply sufficient steam for the plant, with two of the boilers left always idle, then he was to pay the entire cost, and the defendant was to pay nothing. If, however, two of the additional boilers were found sufficient for the purpose, then the defendant was to pay him $8,000, unless the defendant elected to cancel the agreement as to that. Now, the plaintiff avers in its complaint that it was not necessary to use four of the boilers delivered to the defendant, in order successfully to operate the defendant's furnace plant, and it claims pay for four boilers in the sum of $16,000. But I charge you, gentle-men, that, if you find the plaintiff is entitled to recover at all, it can only re-cover $8,000 for two boilers, with interest on that amount from the time it was due or ought to have been paid, if you find from the evidence when that was. If you cannot find when that time was, then interest would run from the beginning of the suit."

This charge, we think, properly construes the contract. It leaves but little to add on the subject. By the original contract to erect the furnace, Witherow was to furnish five water-tube boilers, "guarantied sufficient for the entire plant." It is conceded that the five boilers were insufficient. He furnished another, which was still not enough, and while erecting two more (the seventh and eighth) the contract sued on was made. The De Bardeleben Coal & Iron Company had Witherow's guaranty to furnish sufficient boilers at his own expense,

and it is not probable that it would agree to pay for boilers that were needed to run the plant. Witherow, on the other hand, would not probably agree to furnish, without additional pay, more boilers than were sufficient. The parties being so placed by the original contract, the one sued on was made. Witherow evidently conceded that two more boilers (the ninth and tenth) would be needed. The De Bardeleben Coal & Iron Company thought four more (the ninth, tenth, eleventh, and twelfth) would be needed. The contract provides that two batteries, of two boilers each, shall be furnished; but it provides, in terms, for the payment of $8,000 for one of the batteries if it was retained by the De Bardeleben Coal & Iron Company, and was unnecessary to run the plant. If one additional battery (the ninth and tenth boilers), with those already furnished, was all that was needed, Witherow was to be paid $8,000 for the other battery (the eleventh and twelfth boilers). In no event, by the contract, was he to be paid $16,000 for the two batteries. The last sentence of the agreement confers the right on the De Bardeleben Coal & Iron Company, if, in its opinion, the eleventh and twelfth boilers were not needed, to decline to retain them, and so avoid paying the $8,000 for them. But the defendant accepted and retained both of the batteries, claiming that both were needed to fulfill the guaranty of Witherow. On this construction of the contract, if the last battery was required to run the plant, leaving one battery always idle for necessary cleaning and repairs, the plaintiff was entitled to nothing; if the last battery was not required, the plaintiff was entitled to recover $8,000 and interest. This question was fairly submitted to the jury, and they found, by a verdict for the defendant, that all the boilers furnished (twelve in number) were required to run the plant, leaving two idle ones for cleaning and repairs.

It is assigned as error that the court below refused to grant a new trial in the case. In the United States courts it has been uniformly held that the granting or refusal of a motion for a new trial is within the discretion of the court, and cannot be reviewed by an appellate court. It is contended by counsel for the plaintiff in error that the act of the legislature of Alabama of February 16, 1891 (Acts 1890–91, p. 779, No. 363; Code Ala. 1896, § 434), which provides for appeals from decisions on motions for new trials, should be followed in practice in the federal courts. It is true that the Revised Statutes of the United States (section 914) provide that the practice, pleadings, and forms and modes of proceeding in civil causes, other than equity and admiralty causes, in the circuit and district courts, shall conform, as near as may be, to the practice, pleadings, and forms and modes of proceeding existing at the time in like causes in the courts of record of the state within which such circuit or district courts are held, any rule of court to the contrary notwithstanding. This statute, we think, does not have any application to the review of decisions refusing or granting new trials. In Newcomb v. Wood, 97 U. S. 581, 583, 24 L. Ed. 1085, the court said:

"It has long been the established law in the courts of the United States that to grant or refuse a new trial rests in the sound discretion of the court to which the motion is addressed, and that the result cannot be made the

subject of review upon a writ of error. We cannot think that congress intended by the act of June 1, 1872 (17 Stat. 197, § 5), to abrogate this salutary rule."

The object of section 914 of the Revised Statutes was to assimilate the form and manner in which the parties should present their claims and defenses in preparation for the trial of suits in the federal courts, to those prevailing in the courts of the states. This does not include proceedings in the appellate courts. It has no application to proceedings by writs of error or by appeal. In re Chateaugay Iron Co., 128 U. S. 544, 553, 9 Sup. Ct. 150, 32 L. Ed. 508. The case of Cowley v. Railroad Co., 159 U. S. 569, 16 Sup. Ct. 127, 40 L. Ed. 263, cited in the brief for plaintiff in error, has, we think, no application to this question. It merely states the familiar rule that the federal courts may enforce in equity new rights or privileges conferred by state statutes, as they may enforce on their common-law side new rights of action given by statutes. The Alabama statute cited does not confer on parties litigating in the federal courts the right to review by writ of error the decision of the circuit court refusing to grant a new trial. Fishburn v. Railway Co., 137 U. S. 60, 11 Sup. Ct. 8, 34 L. Ed. 585.

There are many assignments of error (67 in all) which relate to the admission and exclusion of evidence. We have examined all of them, and are of opinion that the record shows no error to the injury of the plaintiff in error. It would serve no useful purpose to discuss them. The judgment of the circuit court is affirmed.