### UNITED STATES v. LESLIE.

(Circuit Court, D. South Dakota. February 6, 1909.)

1. INDIANS (§ 15*)—LANDS—CONVEYANCE BY HEIRS OF ALLOTTEE.

Under Act March 27, 1902, c. 888, § 7, 32 Stat. 275, which provides that "the adult heirs of any deceased Indian to whom a trust or other patent containing restrictions upon alienation has been or shall be issued for lands allotted to him may sell and convey the lands inherited from such decedent, but in case of minor heirs, their interests shall be sold only by a guardian duly appointed, * * * but all such conveyances shall be subject to the approval of the Secretary of the Interior," the approval of the Secretary is necessary to the validity of any such conveyance, whether by an adult or a guardian.

[Ed. Note.—For other cases, see Indians, Dec. Dig. § 15.*]

2. INDIANS (§ 27*)—LANDS—CLOUD ON TITLE—JURISDICTION—ADEQUATE REMEDY AT LAW.

The United States may maintain a suit in equity for the cancellation as a cloud on its title of an invalid conveyance made by the heir of an Indian allottee, who held under a trust patent, the legal title remaining in the United States; there being no adequate remedy at law.

[Ed. Note.—For other cases, see Indians, Dec. Dig. § 27.*]

3. COURTS (§ 335*)—FEDERAL COURTS—REMEDY GIVEN BY STATE STATUTE.

Where the statutes of a state give an owner of land a right of action to quiet title or remove a cloud although out of possession, such remedy may be enforced in the federal courts.

[Ed. Note.—For other cases, see Courts, Dec. Dig. § 335.*]

In Equity. On demurrer to bill.

E. E. Wagner, U. S. Atty., and William G. Porter, Asst. U. S. Atty. Joe Kirby, for defendant.

CARLAND, District Judge. The material facts admitted by the demurrer are as follows: Some time prior to the commencement of

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

this action, Nellie Yellow Horse received from complainants a trust patent for the northwest quarter of section 35, township 95 north, range 70 west of the fifth P. M., Gregory county, S. D., under the provisions of the act of Congress approved March 2, 1889, c. 405, 25 Stat. 888. After the receipt of said trust patent, and before the expiration of the 25-year trust period, said Nellie Yellow Horse died, leaving as her only surviving heir her father Swift Bear Yellow Horse. On or about May 29, 1907, Swift Bear Yellow Horse conveyed the land hereinbefore described to the defendant, Karl Leslie, who is now in possession thereof. The conveyance of Yellow Horse to Leslie was made without the approval of the Secretary of the Interior. Complainants bring this action for the primary purpose of having said conveyance set aside and canceled of record as wholly unauthorized, and as creating a cloud upon the title to said land. As there are no allegations in the bill to support a claim for damages, that feature of the case will be disregarded.

Counsel for defendant, in support of the demurrer, seek to maintain two propositions: First. That the approval of the Secretary of the Interior is not necessary to the validity of a conveyance by an adult heir of an Indian allottee. Second. The complainants cannot maintain this action, as the defendant being in possession of the land, the remedy at law is adequate.

As to the first proposition, it is only necessary to refer to section 7, Act March 27, 1902, c. 888, 32 Stat. 275, which is in the following language:

"Sec. 7. That the adult heirs of any deceased Indian to whom a trust or other patent containing restrictions upon alienation has been or shall be issued for lands allotted to him, may sell and convey the lands inherited from such decedent, but in case of minor heirs their interests shall be sold only by a guardian duly appointed by the proper court upon the order of such court, made upon petition filed by the guardian, but all such conveyances shall be subject to the approval of the Secretary of the Interior, and when so approved shall convey a full title to the purchaser, the same as if a final patent without restriction upon the alienation had been issued to the allottee. * * *"

Manifestly the expression "all such conveyances" refers to all conveyances made by heirs of deceased Indians to whom a trust or other patent containing restrictions upon alienation had been issued. The only conveyances spoken of in the section quoted are conveyances by adult and minor heirs. An adult heir can convey with the approval of the Secretary of the Interior, but a minor heir, being incompetent to make a conveyance, must convey, if at all, through a guardian. But whether the conveyance is by the adult heirs or by the guardian, it must receive the approval of the Secretary of the Interior. It would seem that if the expression "all such conveyances" were to be limited at all, they must be limited to adult heirs, as there would be some reason for holding that as to minor heirs the law had imposed the responsibility of the sale on the court. This position, however, if sound, would not help the defendant, as the conveyance in this case was made by an adult heir. No construction of the law ought to be adopted which would leave the

Indian heir free to convey without any supervision, unless the language of the statute leaves no other reasonable alternative.

As was said by the Court of Appeals of this circuit in United States v. Thurston County, 143 Fed. 291, 74 C. C. A. 429:

"The act of 1902 (Act March 27, 1902, c. 888, 32 Stat. 275) authorized these heirs to sell and convey their inherited lands only when the proposed sales were approved by the Secretary of the Interior. It thereby vested in the Secretary of the Interior plenary power to permit or to forbid the sale proposed. The whole is greater than any of its parts, and includes them all, and the authority to allow or to prohibit proposed sales necessarily included the power to consider and determine the terms and conditions on which such sales should be approved."

The first contention of defendant's counsel, therefore, must be overruled.

In regard to the second contention, it is necessary to consider in the first instance the nature of the title held by complainants. In United States v. Rickert, 188 U. S. 436, 23 Sup. Ct. 480, 47 L. Ed. 532, the Supreme Court uses the following language:

"The word 'patents,' where it is first used in this section (Act Feb. 8, 1887, c. 119, § 5, 24 Stat. 389), was not happily chosen to express the thought which, it is clear, all parts of the section being considered, Congress intended to express. The 'patents' here referred to (although that word has various meanings) were, as the statute plainly imports, nothing more than instruments or memoranda in writing, designed to show for a period of 25 years the United States would hold the land allotted in trust for the sole use and benefit of the allottee, or, in case of his death, of his heirs, and subsequently, at the expiration of that period—unless the time was extended by the President—convey the fee, discharged of the trust and free of all charge or incumbrance. In other words, the United States retained the legal title, giving the Indian allottee a paper or writing, improperly called a patent, showing that at a particular time in the future, unless it was extended by the President, he would be entitled to a regular patent conveying the fee. This interpretation of the statute is in harmony with the explicit declaration that any conveyance of the land, or any contract touching the same, while the United States held the title in trust, should be absolutely null and void."

The primary object of this action being to have the conveyance from Yellow Horse to Leslie declared invalid and canceled of record as a cloud upon the title, no action at law would be adequate to accomplish this purpose. The complainants, having the legal title, may therefore maintain this action to remove the cloud therefrom, unless they are precluded by the rule of equity jurisprudence that requires that a party be in possession of land in order to maintain an action to quiet the title thereof. The complainants are constantly maintaining actions to cancel patents to lands conveyed by them where the possession of the lands is actually in others than the United States, and it is doubtful whether the equity rule referred to applies in all its force to complainants, as the United States have the actual possession of only comparatively few tracts of land. Laying aside, however, the discussion of this question, it is certainly true that complainants have the same rights in bringing this action in the state of South Dakota as any other suitor would have.

Sections 675 and 678, Rev. Code Civ. Proc. S. D., are as follows:

"Sec. 675. An action may be brought by any person against another who claims an estate or interest in real property adverse to him, for the purpose of determining such adverse claims."

"Sec. 678. In an action brought by a person out of possession of real property, to determine an adverse claim or an interest or estate therein, the person making such adverse claims and persons in possession may be joined as defendants, and if the judgment be for the plaintiff he may have a writ for the possession of the premises, as against the defendant in the action, against whom the judgment has passed."

In the case of Ely v. New Mexico & Arizona Railway Co., 129 U. S. 291, 9 Sup. Ct. 293, 32 L. Ed. 688, the Supreme Court spoke as follows concerning similar laws of the territory of Arizona:

"The manifest intent of the statute, as thus amended, is that any person owning real property, whether in possession or not, in which any other person claims an adverse title or interest, may bring an action against him to determine the adverse claim and to quiet the plaintiff's title. It extends to cases in which the plaintiff is out of possession and the defendants in possession, and in which at common law the plaintiff might have maintained ejectment."

In Wehrman v. Conklin, 155 U. S. 314, 15 Sup. Ct. 132, 39 L. Ed. 167, the Supreme Court, in speaking of similar laws of the state of Iowa, used the following language:

"This method of adjusting titles by bill in equity proved so convenient that in many of the states statutes have been passed extending the jurisdiction of a court of equity to all cases where a party in possession, and sometimes out of possession, seeks to clear up his title and remove any cloud caused by an outstanding deed or lien which he claims to be invalid, and the existence of which is a threat against his peaceable occupation of the land and an obstacle to its sale. The inability of a court of law to afford relief was a strong argument in favor of extending the jurisdiction of a court of equity to this class of cases. The statute of Iowa upon which this bill is based is an example of this legislation, and provides (section 3275) that an action to determine and quiet title to real property may be brought by any one having or claiming an interest therein, whether in or out of possession of the same, against any person claiming title thereto though not in possession. It will be observed that this statute enlarges the jurisdiction of courts of equity in the following particulars: (1) It does not require that the plaintiff should have been annoyed or threatened by repeated actions of ejectment. (2) It dispenses with the necessity of his title having been previously established at law. (3) The bill may be filed by a party having an equitable as well as a legal title. (4) In some states it is not even necessary that the plaintiff should be in possession of the land at the time of filing the bill.

"These statutes have generally been held to be within the constitutional power of the Legislature; but the question still remains to what extent they will be enforced in the federal courts, and how far they are subservient to the constitutional provision entitling parties to a trial by jury, and to the expressed provision of Rev. St. § 723 (U. S. Comp. St. 1901, p. 583), inhibiting suits in equity in any case where a plain complete and adequate remedy may be had at law. These provisions are obligatory at all times and under all circumstances, and are applicable to every form of action, the laws of the several states to the contrary notwithstanding. Section 723 has never been regarded, however, as anything more than declaratory of the existing law (Boyce v. Grundy, 3 Pet. 210, 7 L. Ed. 655), and, as was said in N. Y. Guaranty Company v. Memphis Water Co., 107 U. S. 205, 210, 2 Sup. Ct. 279, 27 L. Ed. 484, 'was intended to emphasize the rule, and to impress it upon the attention of the court.' It was not intended to restrict the ancient jurisdiction of courts of equity, or to prohibit their exercise of a concurrent jurisdiction with courts of law in cases where such concurrent jurisdiction had been previously upheld. Again, in the same case, the court uses the following language: 'The real question, then, to be determined in this case is whether the plaintiffs have

an adequate remedy at law; if they have, then section 723 is controlling, and notwithstanding the local practice under the Code, where no discrimination is made between actions at law and in equity, they authorize such suit, the federal courts will not entertain the bill, but will remit the parties to their remedy at law."

In Darragh v. H. Wetter Manufacturing Co., 78 Fed. 14, 23 C. C. A. 609, the Court of Appeals for this circuit, in holding that under the laws of Arkansas a simple contract creditor might file a credit-ors' bill without first reducing his claim to judgment, spoke as follows:

"Upon a careful review of all these authorities, and especially in view of the last two cases to which we have adverted, it may, we think, be safely said that the following rules relative to the jurisdiction and power of the federal courts to enforce rights created, and to administer remedies provided, by states' statutes for enforcement and administration in the courts of the state, have been firmly established in the jurisprudence of the United States. Rights, created or provided by the statutes of the states to be pursued in the state courts, may be enforced and administered in the federal courts, either at law, in equity, or in admiralty, as the nature of the new rights may require. Ex parte McNeil, 13 Wall. 236, 20 L. Ed. 624; Cummings v. Banks, 101 U. S. 153, 157, 25 L. Ed. 903; Trust Co. v. Krumseig, 172 U. S. 351, 19 Sup. Ct. 179, 43 L. Ed. 474.

"An enlargement of equitable rights by statutes of the states may be administered by the national courts as well as by the courts of the states. Case of Broderick's Will, 21 Wall. 503, 520, 22 L. Ed. 599; Clark v. Smith, 13 Pet. 195, 202, 10 L. Ed. 123; Holland v. Challen, 110 U. S. 15, 25, 3 Sup. Ct. 495. 28 L. Ed. 52; Frost v. Spitley, 121 U. S. 552, 557, 7 Sup Ct. 1129, 30 L. Ed. 1010; Reynolds v. Bank, 112 U. S. 405, 5 Sup. Ct. 213, 28 L. Ed. 733; Chapman v. Brewer, 114 U. S. 158, 170, 171, 5 Sup. Ct. 799, 29 L. Ed. 83; Gormley v. Clark, 134 U. S. 338, 348, 349, 10 Sup. Ct. 554, 33 L. Ed. 909; Cowley v. Railroad Company, 159 U. S. 569, 583, 16 Sup. Ct. 127, 40 L. Ed. 263.

"A party by going into a national court does not lose any right or appropriate remedy of which he might have availed himself in the state courts of the same locality. Ex parte McNiel, 13 Wall. 236, 20 L. Ed. 624; Davis v. Gray, 16 Wall. 203, 221, 21 L. Ed. 447; Cowley v. Railroad Co., 159 U. S. 569. 583, 16 Sup. Ct. 127, 40 L. Ed. 263."

The Court of Appeals in the case last cited was not considering the question as to how far section 723 of the Revised Statutes (U. S. Comp. St. 1901, p. 583) would prohibit the enforcement of remedies provided by states' statutes; and the case is cited for the purpose of showing that the national courts will enforce such remedies, unless there is some rule of equity or some statute of the United States prohibiting such enforcement. In the opinion of the court, there is no remedy at common law whereby the complainants could obtain the relief for which they ask, and therefore they may avail themselves in this court of the provisions of the laws of South Dakota hereinbefore quoted, and maintain this action although the defendant is in possession.

The demurrer, therefore, will be overruled, with leave to the defendant to answer on or before the next rule day.