MANN and others *v.* APPEL and others.

(*Circuit Court, S. D. Georgia, E. D.* June 4, 1887.)

1. EQUITY—JURISDICTION—CREDITORS' BILL.
    A court of equity has jurisdiction to reach the property of a judgment debtor justly applicable to the payment of his debts, which cannot be reached by an execution at law.

2. SAME—GROUNDS OF JURISDICTION.
    For the exercise of this jurisdiction the debt must be clear and undisputed, and there must exist special circumstances requiring the interposition of equity, and it must generally be shown that legal means for its collection have been exhausted.

3. SAME—REMEDY AT LAW.
    In order to defeat and oust equity jurisdiction, where such "special circumstances" and other grounds for its interposition exist, it is not enough to show that it is not absolutely necessary to appeal to equity, and that there is a legal remedy, but the remedy at law must be in all respects as satisfactory and as ample as the relief furnished by a court of equity.

4. SAME—REMEDY BY GARNISHMENT.
    Where A. fraudulently transfers property to B., to avoid the payment of his debts, the remedy by garnishment against B. is not so full and complete as a proceeding in chancery; and this is especially true where there are several complainants, and a fund to be distributed according to the priority of their liens.

5. SAME—DISCOVERY.
    The equity jurisdiction in cases of fraud, misrepresentation, and concealment does not depend on discovery.

6. SAME—TRUST.
    The allegations in the bill, if true, create a trust in the hands of Perlinski for the benefit of the creditors of Appel Bros.

(*Syllabus by the Court.*)

In Equity.

*Charles Nephew West,* for complainants.

*Garard & Meldrim, R. R. Richards,* and *J. J. Abrams,* for defendants.

SPEER, J. The complainants, Mann & Co. and Tucker & Co., citizens and merchants of the state of Maryland, bring their bill against Appel Bros. and Julius Perlinski, of the city of Savannah, in this district, and allege that on the twelfth day of November, 1885, Appel Bros. were dealers in clothing and notions in the city of Savannah. Their stock was largely composed of goods purchased on credit. In a short time,—the latter part of the summer and in the early fall of that year,—such purchases, amounting to the sum of $20,000, were added to a stock worth $2,000; that these purchases were made at a time of depression and great stagnation in business, and were bought by Appel Bros. with

fraudulent intent not to pay for them; that at the date aforesaid, having received the goods, and before the bills therefor were due, Appel Bros., combining with Julius Perlinski, (who was the uncle of the members of the firm,) to defraud their creditors, gave various notes, of different dates, for fictitious debts, to Perlinski, to-wit: one note of $1,000, due February 4, 1885; one note of $1,000, due December 15, 1885; one note of $200, due March 15, 1885; one note of $2,000, due October 15, 1885; one note of $900, due March 13, 1885,—the whole aggregating $5,100; that on the day following the execution of these notes they fraudulently made a note for $2,000, due to one Charles S. Deutsch, their brother-in-law, and for five days they contracted mortgages in divers amounts to sundry persons, and one mortgage to their counsel, who prepared the assignments, for $250.

The bill further alleges that on the eighteenth day of November, 1885, the Appel Bros. executed an assignment of their property, with preferences to the mortgagees before mentioned; and on the twentieth day of November, two days thereafter, Julius Perlinski foreclosed his mortgage on the stock of goods, and had execution issue for the sum of $5,100 principal, with interest and costs, which, on the twentieth day of November, was levied on the stock of goods. Immediate application was made by the attorneys of Appel Bros. and Perlinski to have a speedy sale of the goods, on the ground that they were subject to great expense in keeping, and liable to deterioration in value; and the entire stock of goods, having been carried to the court-house of Chatham county, were, on the fourth day of December, 1885, sold, and were bought by Perlinski for the sum of $6,600, nearly all of which was appropriated to his alleged debt, charges, and attorney's fees.

Complainants charge that the whole of the transaction, except the employment of counsel, was fraudulent; that there was no debt to Perlinski; that the sale was hurried to anticipate the maturity of the bills for the goods, the interference and action of the creditors; that the value of the stock was fully $20,000, but that it was sold hastily and in bulk; was absorbed by Perlinski in the manner above recounted, so that the general creditors from whom the goods had been purchased were unable to derive any payment from them. Appel Bros. were indebted to Mann & Co. $1,121, for the price of some of the goods thus acquired by Perlinski, which demand was sued to judgment on the tenth day of May, 1886. They were likewise indebted to Tucker & Co. $576.38, which was sued to judgment the same day.

The bill also alleges that Appel Bros. were insolvent, and that *nulla bona* has been returned upon the executions of Mann & Co. and Tucker & Co. by the sheriff of the state court; and charges that Perlinski converted all of these goods to his own use, fraudulently, and contrary to equity. The prayers are that all the creditors of Appel Bros. may be made parties to the bill, and that Julius Perlinski may be decreed to be a trustee for the creditors of the trust, to be fixed by the decree at the full value of the property acquired by him at the sale, and for a decree against him for the full value of the trust, to be divided according to the

priorities of the several demands of the creditors of Appel Bros. Discovery is waived.

To this bill the defendants demur—*First*, because the complainants have an adequate remedy at law.

*Second*, because there is no equity in the bill; and upon the demurrer counsel have been fully heard.

It is insisted by the defendants that there must exist special circumstances, which they assert do not appear in the bill before the court, to authorize equitable interference in behalf of a creditor seeking to collect his debt, and quite an array of decisions are marshaled in support of this proposition.

The case of *Bessman* v. *Cronan*, 65 Ga. 559, is cited. In that case, however, there had been a fraudulent transfer of real estate, and equitable jurisdiction was not entertained, because the creditor could readily levy his execution on the land, and test the validity of the transfer, and the remedy at law was held ample.

In *Huff* v. *Ripley*, 58 Ga. 12, the defendants bought a lot of bacon, giving for it a note made by one of their creditors, who was known by them to be insolvent. There a simple action of trover was held adequate. There no equitable relief was sought save the recovery of the bacon; and, besides, the court in that case declares that the policy of the legislation in Georgia has been to restrict the jurisdiction of equity courts. In *Buzard* v. *Houston*, 119 U. S. 347, 7 Sup. Ct. Rep. 249, the defendants having agreed to sell the plaintiffs 1,500 cows and 50 bulls, palmed off on them, in lieu, an agreement previously made with one Mosty, representing that Mosty was solvent, and able to perform his contract, when in fact Mosty had no bulls or cows, and was insolvent. In that case it was held, Mr. Justice GRAY delivering the opinion of the court, that an action of deceit could be maintained, and would afford a plain, adequate, and complete remedy. There this well-settled rule is announced:

"Whenever a court of law is competent to take cognizance of a right, and has power to proceed to a judgment, which affords a plain, adequate, and complete remedy, without the aid of a court of equity, the plaintiff must proceed at law, because the defendant has a constitutional right to a trial by jury."

And Mr. Justice STORY announced in *Bean* v. *Smith*, 2 Mason, 270, "that the judiciary act is in no sense intended to narrow the jurisdiction of courts of equity of the United States, which depends upon what is a proper subject of relief in courts of equity in England, the great reservoir from which we have extracted our principles of jurisprudence;" citing *Robinson* v. *Campbell*, 3 Wheat. 212, 221; *U. S.* v. *Howland*, 4 Wheat. 108, 115.

In *Public Works* v. *Columbia College*, 17 Wall. 530, the supreme court, Mr. Justice FIELD pronouncing the opinion with his usual felicity of diction, declares:

"The jurisdiction of a court of equity to reach the property of a debtor justly applicable to the payment of his debts, even when there is no specific lien on the property, is undoubted. It is a very ancient jurisdiction, but for its ex-

ercise the debt must be clear and undisputed, and there must exist some special circumstances requiring the interposition of the court to obtain possession of and apply the property. Unless the suit relate to the estate of a deceased person, the debt must be established by some judicial proceeding, and it must generally be shown that legal means for its collection have been exhausted."

It would seem that each and every "special circumstance" here enumerated is found to appear in the bill before us.

In *Haralson* v. *Newton*, 63 Ga. 163, it is held "that a pretended sale by a debtor, for the purpose of avoiding his creditors, does not render the interposition of the court of equity necessary, especially when discovery is waived. Attachment will lie under the Code. Section 3297." This does not tend to controvert the proposition that the jurisdiction in equity may still be more plain, ample, and adequate, and is therefore to be entertained. These citations present the strength of the argument, upon authority, made by counsel for the demurrer.

There are, however, features in this case which make the authorities cited clearly inapplicable. Two judgment creditors have united as complainants to the bill. There are doubtless many other creditors who will unite; but, aside from this, the allegations of the bill present facts upon which equity courts have steadily entertained equity jurisdiction. There is a collusive judgment to be attacked. There are fictitious debts made to sundry parties to be declared null and void. There are fraudulent mortgages, made ostensibly to secure these debts, to be canceled. There is an implied trust to be ascertained and declared. There is a serious and elaborate fraud to be detected and nullified. It is true that these things may, in part at least, be done at law; as in *Williams* v. *Martin*, 7 Ga. 377, it was held "that a fraudulent mortgage and judgment of foreclosure could be attacked for fraud on the trial of a claim. But it is not enough to say that there is a legal remedy. Such remedy, in order to oust and prevent jurisdiction in equity, must be in all respects as satisfactory as the relief furnished by a court of equity. 1 Pom. Eq. Jur. 297; *Boyce* v. *Grundy*, 3 Pet. 210.

It is said that garnishment is an ample remedy, and *Lamb* v. *Stone*, 11 Pick. 526, is cited. There, however, there was but a single creditor, but one party defendant, and besides it was an action on the case, and the court held that attachment by the "trustee process," which is in the nature of garnishment, was the proper remedy. I do not think that garnishment would be adequate for the purposes of relief here.

In *Phillips* v. *Wesson*, 16 Ga. 137, a case precisely similar to this in principle, and almost identical in fact, it was held by the court, Chief Justice LUMPKIN delivering the opinion, "that when A. fraudulently transferred property to B. to avoid the payment of his debts, the remedy by garnishment against B. is not so full and complete as a proceeding in chancery." Chief Justice LUMPKIN further says: "The remedy at law is not so full in another respect. This is a creditors' bill, and, should a recovery be had, a court of equity would be the most appropriate forum for distributing the funds among the claimants."

See, also, Bump, Fraud. Conv. 529, 531, 532, and the authorities there cited.

On the whole, this, I think, is not a case where the remedy at law is so ample or so adequate as that in equity.

The same reasons apply, upon authority and principle, to the contention that there is no equity in the bill. It is undoubtedly a well-settled principle that a court of chancery should assist a judgment creditor to reach the property of his debtor, which cannot be reached by an execution at law, and especially when it is attempted fraudulently to make way with it. This is particularly true where it is necessary to cancel fraudulent incumbrances; and while the allegations here are not so distinct and specific as to the several mortgages alleged to be fraudulent as they may be and ought to be made, if the facts will warrant the amendment, there is quite enough in the bill to authorize the court to entertain jurisdiction, and to hear the evidence. The allegations here, if true, create an implied trust in the hands of Perlinski for the benefit of the creditors of Appel Bros. Code Ga. §§ 2316, 3178, 3194.

In *Hadden* v. *Spader*, 20 Johns. 554, (court of errors of New York,) this question is fully considered, and, in a careful opinion, that eminent tribunal announced certain salutary principles, which are in point here. The case was that of Davis, a merchant, who, refusing to pay his creditors, combined with the appellant to conceal the property, and made an assignment to him. The bill prayed that the assignment be declared void, and that the goods and chattels of Davis in the hands of the appellant might be submitted to the operation of their execution, and for the payment of the demands of such other *bona fide* creditors of Davis as should come in and contribute to the expenses of the suit. The bill was demurred to, but the court overruled the demurrer, against the strong and elaborate argument of Thomas Addis Emmett, which is presented in the report. WOODWORTH, J., said a court of equity is the only tribunal whose proceeding can reach the property of a debtor in the hands of his trustee. After well stating the general principle, he proceeds to cite many cases of eminent authority. The decision is, indeed, a treasury of learning upon this interesting topic. The question is stated as follows:

"The case now before the court raises this question: whether a debtor who has placed his funds in the hands of a trustee, where they cannot be reached by an execution at law, can put his creditors at defiance, and enjoy the benefit of those funds which ought to be appropriated to the payment of his debts. The injustice and immorality of such a course will not be doubted; but it is urged that the powers of the court cannot rightfully be carried so far as to correct the mischief, and, if they could, the application of the rule would be attended with great and serious inconvenience. If, in truth, no case could be found where relief had been applied for or granted, on facts similar to these before us, that result would by no means establish the doctrine contended for. The inquiry would still be, do not the great and comprehensive powers of the court of chancery, in relation to frauds and trusts, necessarily confer the right to come in aid of the court of law by compelling the trustee to pay over to the creditor the funds on which he has no claim, nor any right to withhold. His honor, the chancellor, has decreed the payment of that sum to be distrib-

uted ratably among the respondents, *i. e.*, the creditors, in proportion to the amount due on their respective judgments."

And this judgment was affirmed.

It is true in that case that discovery was sought, while it is waived in the bill before the court; but equity has always jurisdiction of fraud, misrepresentation, and concealment, and this does not depend on discovery. *Jones* v. *Bolles*, 9 Wall. 364.

In *Dunphy* v. *Kleinsmith*, 11 Wall. 610, the allegations were that judgment creditors were unable to collect their demands against the defendants, who had executed a mortgage for $30,000 on property worth $70,000, to one Dunphy. The bill stated that the mortgage was made to hinder, delay, and defraud the creditors, and that the defendant did not owe Dunphy any such amount; and by the fraudulent mortgage and fictitious debt Dunphy had prevented the plaintiff and other judgment creditors of Moss from collecting their just demands. The bill prayed that the mortgage might be declared fraudulent and void; that a receiver should be appointed to hold the property. Mr. Justice BRADLEY, delivering the opinion of the court, declares:

"This case was clearly a case of chancery jurisdiction, and one necessarily requiring equitable, as distinguished from legal, relief. The property, according to the charge of the complainant, had been put beyond the reach of the ordinary process of the law. It had been disposed of by the assistance, and through the co-operation, of Dunphy, in such a manner that the judgment creditors could not find it to satisfy their claims, or, if found, it was held by Dunphy under cover of an assignment which *prima facie* gave him the legal title. This is what is charged by the judgment creditors. They further charge that this was a fraudulent contrivance to hinder and delay them in the recovery of their debts. In a country or territory where the systems of common law and chancery both substantially prevail, it is perfectly clear that chancery only could give adequate relief in such a case."

This principle is fully applicable in the courts of the United States. See, also, *Bean* v. *Smith*, 2 Mason, 252; *Lorman* v. *Clarke*, 2 McLean, 568; *Marsh* v. *Burroughs*, 1 Woods, 463; *Burt* v. *Keyes*, 1 Flip. 61.

I have been careful to mention the very cogent authorities upon which the conclusions here are reached. The frequent cases brought to the attention of this court where persons engaged in merchandising buy on credit valuable stocks of goods, and then, by comprehensive assignments, startling preferences, usually executed to relatives by blood or marriage, succeeded by unexpected and inexplicable failures, which leave the debtors enjoying all the comfort of apparent affluence, and the creditor ineffectually exhausting the remedies of the law for the recovery of his goods, or their unpaid value, would render it peculiarly unfortunate to commercial and business interests if courts of equity found it necessary to surrender their ancient jurisdiction over frauds, fraudulent assignments, and implied trusts for the benefit of creditors. *Curtis* v. *Wortsman*, 25 Fed. Rep. 893; *Jaffrey* v. *Brown*, 29 Fed. Rep. 476; *Bernheim* v. *Birnbaum*, 30 Fed. Rep. 885.

The demurrer is overruled.