### HUDSON et al. v. WOOD et al.

(Circuit Court, W. D. Kentucky. January 3, 1903.)

**1. FEDERAL COURTS—PROCEEDINGS FOR ENFORCEMENT OF JUDGMENT—STATUTE GIVING BENEFIT OF STATE REMEDIES.**

Rev. St. § 916 [U. S. Comp. St. 1901, p. 684], which provides that a party recovering a judgment in any common-law cause in a federal court "shall be entitled to similar remedies on the same, by execution or otherwise, to reach the property of the judgment debtor, as are now provided in like causes by the laws of the state," etc., does not embrace remedies in equity by independent suit which may have been given by the statutes of a state, but is limited by the phrase "in like causes" to remedies provided in actions at law wherein judgments were recovered.

**2. SAME—CREDITORS' SUIT—ENFORCEMENT OF LEGAL DEMANDS IN EQUITY.**

In a creditors' suit in a federal court by a judgment creditor against the judgment defendant and another, alleged to be his debtor on a mere money demand, the question of the latter's indebtedness, if denied by him, cannot be tried, even though such procedure is authorized by a state statute, since that would deprive him of his constitutional right to a jury trial; but the complainant may, by the joinder of such defendant, obtain a discovery from him as to his indebtedness and the right to an equitable lien thereon, to become effective and to be enforced when such indebtedness shall have been established in an action at law, and also the appointment of a receiver, with authority to bring such an action.

**3. EQUITY—BILL FOR DISCOVERY—SUFFICIENCY.**

A defendant in a creditors' suit, from whom discovery is prayed in respect to his indebtedness to the judgment debtor, cannot object to the making of such discovery because the bill waives answer under oath.

**4. SAME—MULTIFARIOUSNESS.**

A creditors' bill in a federal court, against judgment debtors and another who is alleged to be indebted to them on a legal demand, is multifarious, as against the latter, where it prays, not only for a discovery and for a decree adjudging a claim made by him that his indebtedness was to another than the judgment debtors to be fraudulent, but also for a personal judgment against him, as uniting equitable and legal demands, and because the latter is a demand over which the court is without jurisdiction in equity.

In Equity. On demurrer to bill.

Dodd & Dodd and Joseph Fettretch, for complainants.

Fairleigh, Straus & Eagles, Helm, Bruce & Helm, and Humphrey, Burnett & Humphrey, for defendant Boyle.

EVANS, District Judge. In an action at law lately pending in this court the complainants, C. I. Hudson & Co., who are citizens of New York, recovered a judgment against Geo. T. Wood, George L. Bacon, and Cary H. Bacon, individuals who composed the partnership firm of Geo. T. Wood & Co., brokers doing business in Louisville, for $81,029.70, besides interest and costs, but subject to a credit of $1,071.37. Subsequently an execution of fieri facias was issued by the clerk and placed in the hands of the marshal, by whom it was returned nulla bona. Afterwards this suit in equity was instituted by the judgment creditors against Geo. T. Wood, George L. Bacon, and Cary H. Bacon, partners as Geo. T. Wood & Co., St. John Boyle, and a corporation styled Geo. T. Wood & Co., all of whom are citizens of Kentucky. The bill of complaint, after alleging the foregoing facts and stating that the members of said partnership firm—the judgment debtors—each had in his possession or under his control money or securities therefor, or other equitable interests, etc., not subject to execution, and which they refused to surrender in payment of the judgment, contains averments as follows:

"(4) Plaintiffs state that they are informed and believe and charge that the defendants George T. Wood, George L. Bacon, and Cary H. Bacon, partners as George T. Wood & Co., hold as an asset a claim against the defendant St. John Boyle for at least the sum of $81,029.70, with interest thereon from May 10, 1901, originating from the undertaking of the said St. John Boyle, as their undisclosed principal, to supply them, as his agents, with funds sufficient to pay off and discharge the said liability in favor of these plaintiffs against them; that the said indebtedness from the said George T. Wood & Co. to these plaintiffs arose and was created for the account and benefit of the said St. John Boyle as principal, in transactions wherein he employed the said George T. Wood & Co. as his agents, and that in executing his instructions and performing their duties as such agents the said George T. Wood & Co. incurred the said liability to plaintiffs. Plaintiffs state that it was the duty of the defendant St. John Boyle to supply the said George T. Wood & Co. with money sufficient to pay the said liability, and that he was and is legally bound to indemnify and pay them the amount of the said debt, interest, and costs. Plaintiffs state that they are informed, believe, and charge that the defendant St. John Boyle has undertaken, agreed, and promised to pay the said George T. Wood & Co. the money necessary to pay the said entire liability to plaintiffs, but has wholly failed and neglected to do so; that the said claim against St. John Boyle is an asset held by the said George T. Wood & Co., the proceeds of which, when and to the extent collected, should in equity and good conscience be applied on the plaintiffs' said judgment.

"(5) Plaintiffs further state that they are now informed that the defendants George T. Wood, George L. Bacon, and Cary H. Bacon, and the defendant St. John Boyle, claim that a pretended corporation was formed under the general laws of Kentucky in the early part of 1901 in the corporate name of George T. Wood & Co., and in which the defendants George T. Wood, George L. Bacon, and Cary H. Bacon were the sole incorporators, and equally interested as stockholders; that said corporation was formed to take over the assets and liabilities of the said firm of George T. Wood & Co.; and that the said defendants are now pretending that the claim asserted against the defendant St. John Boyle, in the fourth paragraph hereof, as aforesaid, is due to the said corporation of George T. Wood & Co., and not to the said firm of George T. Wood & Co. Plaintiffs state that during all the times hereinbefore set out, and when the said indebtedness was incurred to them by George T. Wood & Co., and created by the said St. John Boyle to the said George T. Wood & Co., the business of the said George T. Wood & Co. was conducted and carried on under the firm name of George T. Wood & Co., and under the

firm name of Wood, Bacon & Co., both of which firms, as well as the said pretended corporation, was composed of the said George T. Wood, George L. Bacon, and Cary H. Bacon alone, and all of the business in which the said George T. Wood & Co. was interested was carried on in the same office, by the same parties, as proprietors, bookkeepers, and employés, and with all of the same appliances. Plaintiffs aver that they are informed, believe, and charge that the said pretended claim that the account against said St. John Boyle belonged to the said corporation of George T. Wood & Co., instead of the firm of George T. Wood & Co., is a false and fraudulent device and pretense; that neither the said firm nor the said corporation has ever paid any part of the said judgment, nor have the said corporation any title, claim, or interest against the said St. John Boyle on account of said judgment indebtedness. Plaintiffs make the said George T. Wood & Co., Incorporated, a party hereto, and call it to answer and assert any claim or equity it may have to any of the assets sought to be subjected to the payment of the plaintiffs' judgment, or be forever barred therefrom."

After other averments not material to the matters now in hand, relief is prayed in this language:

"(7) In consideration of the premises, and forasmuch as the plaintiffs are without any adequate remedy at law, and cannot have adequate relief except in a court of equity, and to that end that the defendants, George T. Wood, George L. Bacon, Cary H. Bacon, Geo. T. Wood & Co., Incorporated, and St. John Boyle, may, if they can, show why the plaintiffs should not have the relief to which they are entitled, and for which they pray, and that the said defendants shall make full disclosures and discoveries of the assets and matters herein alleged as to each of them, so that same may be subjected to the plaintiffs' judgment, and that the said defendants, according to their and each of their best knowledge, remembrance, information, and belief make full, true, direct, and perfect answers to the matters herein stated and charged against them, respectively, but not under oath, their oaths being hereby expressly waived, the plaintiffs pray as follows: (1) That the said George T. Wood, George L. Bacon, and Cary H. Bacon, and each of them, be compelled to disclose and surrender to the court herein all money and securities therefor, choses in action, and legal and equitable assets in their possession or under their control and not exempt to them by law, to the end that the same shall be applied, under proper orders of this court, to the satisfaction of plaintiffs' judgment herein, and that the net proceeds arising therefrom be turned over to plaintiffs and applied as credits on their said judgment. (2) That the plaintiffs, in the name of said George T. Wood & Co., recover of the defendant St. John Boyle the sum of $81,029.70, with interest thereon from May 10, 1901, and their taxable costs as to the said Boyle incurred and expended herein, so that the net proceeds of such recovery, when and as collected, shall be applied on said judgment against the said George T. Wood & Co., so far as may be necessary to pay the same. (3) That the defendant George T. Wood & Co., Incorporated, be adjudged to have no interest or claim in any of the aforesaid assets, or any assets discovered and disclosed herein, until the plaintiffs' said judgment, interest, and costs shall have been first satisfied. (4) That the plaintiffs may have such other and further appropriate relief in the premises as the nature of the case may demand, as equity may require, and as to this court may seem proper, to the end that may be necessary to enforce the plaintiffs' aforesaid judgment, interest, and costs."

No objection to the proceeding is taken by any of the defendants, except Boyle, who has interposed a demurrer to the bill upon three distinct grounds, to wit: (1) That this court has no jurisdiction of the alleged complaint; (2) that the bill is multifarious; and (3) that the bill does not contain any matter of equity whereon the court can ground any decree or give the complainants any relief against the defendant Boyle. The questions thus raised have been ably argued, and an effort to find a proper solution of them has required no little

labor. While at first impression they may seem to present nothing troublesome, the more they have been considered the more difficulties have multiplied, mainly because of the paucity of exactly applicable and instructive authority.

2. For the demurrant it is insisted (1) that the bill is multifarious; (2) that in reality it is, under some disguises, an action at law to recover, in complainants' names, but for the benefit of Geo. T. Wood & Co., as well as themselves, a money judgment against Boyle upon a mere legal demand, all issues in respect of which he has a constitutional right to have tried in a court of law; and (3) that the bill presents a cause of action upon a legal demand by the complainants as assumed assignees of Geo. T. Wood & Co., or as persons equitably entitled to be such, of their debt against Boyle, and that, as all the defendants are citizens of Kentucky, this court is without jurisdiction, not only because the remedy at law against Boyle is plain, adequate, and complete, but also because an assignee of a chose in action cannot sue at all in the federal courts unless his assignor could have done so,—two legal conclusions about which there could be little controversy if the premises be correct. New York Guaranty & Indemnity Co. v. Memphis Water Co., 107 U. S. 214, 2 Sup. Ct. 279, 27 L. Ed. 484. However, the contention need give little or no trouble, as there seems to be no substantial basis for the idea of an assignment, nor, indeed (as we may take this occasion to say), for the contention that the facts stated in the bill respecting the origin and nature of the claim against Boyle show any equitable interest therein in favor of the complainants.

By the complainants it is insisted, among other things, that under section 916 of the Revised Statutes of the United States [U. S. Comp. St. 1901, p. 684] they have the right to all the processes and remedies provided by the Civil Code of Practice of Kentucky for subjecting to their claim any indebtedness due to their judgment debtors. That section is in this language:

"The party recovering a judgment in any common-law cause in any circuit or district court shall be entitled to similar remedies upon the same, by execution or otherwise, to reach the property of the judgment debtor, as are now provided in like causes by the laws of the state in which such court is held, or by any such laws hereafter enacted which may be adopted by general rules of such circuit or district court; and such courts may, from time to time, by general rules, adopt such state laws as may hereafter be in force in such state in relation to remedies upon judgments, as aforesaid, by execution or otherwise."

When sections 5595 and 5596 of the Revised Statutes [U. S. Comp. St. 1901, p. 3750], which relate to the revision of the Statutes completed in 1873, were enacted, section 916 appeared in its present form for the first time, although in substance it was contained in the judiciary act of 1789. Sections 915 and 916 are adaptations of the provisions of section 6 of "An act to further the administration of justice," approved June 1, 1872 (17 Stat. 197). By its terms section 916 gave to parties "recovering judgments at law" in the federal courts similar remedies upon the same "by execution or otherwise" to reach the property of the judgment debtor as was then provided in "like causes" by the laws of the state where the court is held, or

by any law subsequently enacted which might be adopted by a rule of the court. As no such rule has been adopted by this court, we are remitted to the laws of Kentucky in force either on June 1, 1872, when the act of 1872 was approved, or to those in force on December 1, 1872, pursuant to section 5595, Rev. St. In this case it is immaterial which date we take, because the laws of Kentucky having any application were precisely the same at each of them. Those laws are to be found in sections 474 to 478, inclusive, of Myers' Code, and to them more explicit attention will be called further along.

Construed in reference to the maxim "ejusdem generis," there would, even in the absence of authority, be great doubt in the mind of the court whether section 916, Rev. St., embraces remedies in equity at all, or whether its provisions are not limited and confined to legal remedies, such as the old writs of fieri facias, mandamus, and the like, and to any other legal process or remedy which the states may invent or bring into vogue. These doubts are increased when we read section 6 of the act of 1872, and carefully analyze the words of that section in connection with the maxim referred to. Nor are they diminished when we reflect that the constitution itself has made it essential that great care should be taken to keep separate and distinct the respective remedies at law and in equity. Fenn v. Holme, 21 How. 484, 16 L. Ed. 198; Bennett v. Butterworth, 11 How. 669, 13 L. Ed. 859. Only "judgments at law" are in terms referred to in the section, and the remedies made available in this court by it are such as are provided by the laws of Kentucky "in like causes" by "execution or otherwise." The United States having no common law of its own in 1789, and no general Code of Practice being desirable, congress, which has the exclusive power to regulate practice in the national courts, no doubt concluded that it was not only appropriate, but essential, for it to authorize the courts of the United States in actions not equitable to use such remedies and writs as were used "in like causes"—that is, actions at law wherein judgments were recovered—in the states where the court sat. But while this, at that early date, gave the courts ample powers in actions at law, it was not meant, as it seems to us, and as will, we think, be clearly shown by the authorities, to affect, in any manner, remedies in equity, which were to be governed by other rules. Indeed, the court has industriously, but in vain, searched for authority which shows the applicability of section 916 to remedies in equity, and it may be more than doubted whether the power to use as equitable those remedies which are essentially remedies at law can be bestowed by state legislation upon the federal courts, although it is clear enough that, if any new rights which are equitable in their nature be conferred by state legislation, they may be made available in the federal courts, if it can be done pursuant to the modes of equity procedure established by the supreme court or by federal laws, or even in some instances by state laws, where the right and the remedy are practically the same things. Gormley v. Clark, 134 U. S. 348, 10 Sup. Ct. 554, 33 L. Ed. 909, and cases collected in 8 Notes U. S. Rep. 464, 465. But this in no wise depends upon section 916.

Many authorities were cited by counsel, which were supposed to

have some bearing on the question. We will only notice some of the more important of them.

In Ex parte Boyd, 105 U. S. 647, 26 L. Ed. 1200, the petitioner had been sued at law by the United States in the district court for the Southern district of New York, and judgment had been rendered against him. After an execution had been returned not satisfied, it was ordered by the court in that case, pursuant to a law of New York providing for proceedings suppletory to a writ of fieri facias, that the matter be referred to a commissioner of the court to examine Boyd under oath touching his property, etc., and Boyd was ordered to appear for such examination. When he appeared he refused to take an oath, and was attached for the contempt. He thereupon sued out a writ of habeas corpus to test the validity of his imprisonment, and this question and whether he was entitled to be released were the subjects of the court's consideration. After an elaborate discussion of them, and particularly as affected by section 916, Rev. St., the supreme court held that the discharge of the petitioner was properly refused. As bearing upon the proceeding in this case, the significance of what the court said at pages 656, 657, 105 U. S., cannot be overlooked. Its language was:

"But here we have nothing to do with any question but that of discovery. The only relief sought is knowledge of property belonging to the debtor applicable, either at law or in equity, to the payment of the creditor's judgment. What shall be done, after that knowledge has been acquired, is to be determined upon the circumstances as they may then appear, and cannot now be considered. For the proceeding for discovery is distinct and entirely separable from the subsequent relief, if any shall then be sought."

In Willard v. Wood, 135 U. S. 309, 10 Sup. Ct. 831, 34 L. Ed. 210, the plaintiff, a mortgagee, brought an action at law in the supreme court of the District of Columbia to recover from the grantee of the mortgaged premises the amount of the mortgage debt, which, as part of the purchase money, he had covenanted with the mortgagor to pay to the mortgagee; but the supreme court of the United States on writ of error affirmed the judgment dismissing the action, because under the practice of the courts of the United States, especially in that district, the jurisdiction was exclusively in equity in such cases, as had been held in Keller v. Ashford, 133 U. S. 610, 10 Sup. Ct. 494, 33 L. Ed. 667. As the contract was between the mortgagor and his grantee, there was no privity between the latter and the mortgagee,—the plaintiff.

In Cowley v. Railroad Co., 159 U. S. 569, 16 Sup. Ct. 127, 40 L. Ed. 263, a proceeding in equity had been instituted in a district court in Washington for obtaining a new trial of a case wherein a judgment had been procured by fraud in a suit brought and decided in the territorial court before the admission of the state. This proceeding was removed to the federal court, which dismissed it. The supreme court, in its opinion reversing this judgment, at page 582, 159 U. S., page 131, 16 Sup. Ct., and 40 L. Ed. 263, said:

"Although the statute of a state or territory may not restrict or limit the equitable jurisdiction of the federal courts, and may not directly enlarge such jurisdiction, it may establish new rights or privileges which the federal courts

may enforce on their equity or admiralty side, precisely as they may enforce a new right of action by statute upon their common-law side."

But evidently this had no reference to section 916.

In Railroad Co. v. Hart, 114 U. S. 654, 5 Sup. Ct. 1127, 29 L. Ed. 226, Hart recovered a judgment at law in the federal court against the city of New Orleans, and after a return of nulla bona filed in that action at law a supplemental petition, as authorized by the laws of Louisiana, alleging that, having reason to believe that the railroad company owed the city, he had caused a seizure of such indebtedness to be made in the hands of the company, and prayed that it might be cited to answer, and that any indebtedness found to exist might be subjected to his judgment. The street railroad company answered, explicitly denying any indebtedness to the city. Upon the issue formed a jury was impaneled as required by law, and after hearing the evidence it was found that the company was indebted to the city, and judgment was rendered accordingly. Upon a writ of error to the supreme court it was held, upon the authority of Ex parte Boyd, that the proceeding was admissible in the federal court under the provisions of section 916. At page 662, 114 U. S., page 1131, 5 Sup. Ct., and 29 L. Ed. 226, is found this language:

"The meaning of that section is that the remedies, by execution or otherwise, on a judgment in a common-law cause in a circuit court, shall be the same as were then provided by the laws of the state in respect to judgments in suits of a like nature or class. 'Like causes' is the expression. By article 641 of the Code of Practice of Louisiana, it was and is provided that, 'when the judgment orders the payment of a sum of money, the party in whose favor it is rendered may apply to the clerk and obtain from him a writ of fieri facias against the property of his debtor.' It is this provision, and the garnishee proceedings consequent upon it, provided by the laws of Louisiana in respect to judgments generally of a like nature or class with those in the present case, which the act of congress adopted as remedies for the judgment creditor in a common-law cause in the circuit court."

It will not escape notice that, like the Boyd Case, the Hart Case was an action at law wherein, by the laws of New York and Louisiana, respectively, that sort of supplementary proceeding or garnishment was allowed in actions at law, precisely as the writ of mandamus may issue in cases where it is appropriate as an ancillary remedy. None of these cases, however, fully reach the exact point to be determined on this hearing, any more than do such cases as uphold the right to resort to equity where there is a trust fund to be applied to debts, or where a judgment creditor has otherwise an equitable interest, more or less pronounced, in the thing sought to be subjected by equitable proceedings; and, as already indicated, it does not seem to the court that it can be maintained that complainants, upon the facts stated by them, have any such interest in the claim of Geo. T. Wood & Co. against Boyle as to bring this case within the decisions which relate to trust funds or equitable interests.

Another class of cases where equity may have jurisdiction upon principles allied to the trust fund doctrine may be regarded as represented by Mann v. Appel (C. C.) 31 Fed. 378. Nor is it doubted that by the institution of equitable proceedings in a proper case a complainant acquires a lien, as in Commissioners v. Earle, 110 U. S. 710, 4 Sup. Ct. 226, 28 L. Ed. 301, Metcalf v. Barker (Dec. 1, 1902) 23 Sup.

Ct. 67, 47 L. Ed. ——, and also, as we shall see, in this case. But Johns v. Wilson, 180 U. S. 440, 21 Sup. Ct. 445, 45 L. Ed. 613, and Insurance Co. v. Hanford, 143 U. S. 187, 12 Sup. Ct. 437, 36 L. Ed. 118, are cases where certain matters of practice were discussed which bear too little resemblance to the case before us to render necessary a more particular statement of them.

For the defendant Boyle it is insisted that the principles announced in Scott v. Neely, 140 U. S. 106, 11 Sup. Ct. 712, 35 L. Ed. 358, must rule the questions now involved. There, in accordance with what might be done in a state court under the laws of Mississippi, a suit in equity was filed in the federal court sitting in that state to subject to the plaintiff's debt certain property of the defendant before there had been any judgment upon the demand. It was contended that, because the state allowed this remedy by an equitable action in her courts before a judgment at law had been obtained, it followed that the same remedy was available in equity in the courts of the United States; but the supreme court denied the proposition, and, among other things, said, at pages 109, 110, 140 U. S., page 713, 11 Sup. Ct., and 35 L. Ed. 358:

"At the outset of the case the question is presented whether a suit of this kind, where the complainant is a simple contract creditor, can be maintained in the courts of the United States. It is sought to uphold the affirmative of this position on the ground that the statute of Mississippi creates a new equitable right in the creditor, which, being capable of assertion by proceedings in conformity with the pleadings and practice in equity, will be enforced in those courts. The cases of Clark v. Smith, 13 Pet. 195, 10 L. Ed. 123; In re Broderick's Will, 21 Wall. 503, 22 L. Ed. 599, and Holland v. Challen, 110 U. S. 15, 3 Sup. Ct. 495, 28 L. Ed. 52, are cited in its support. The general proposition as to the enforcement in the federal courts of new equitable rights created by the states is undoubtedly correct, subject, however, to this qualification, that such enforcement does not impair any right conferred, or conflict with any inhibition imposed, by the constitution or laws of the United States. Neither such right nor such inhibition can be in any way impaired, however fully the new equitable right may be enjoyed or enforced in the states by whose legislation it is created. The constitution in its seventh amendment declares that 'in suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved.' In the federal courts this right cannot be dispensed with, except by the assent of the parties entitled to it; nor can it be impaired by any blending with a claim properly cognizable at law of a demand for equitable relief in aid of the legal action or during its pendency. Such aid in the federal courts must be sought in separate proceedings, to the end that the right to a trial by a jury in the legal action may be preserved intact."

Here, indeed, was a case where the remedy in equity was held not to be available in the federal courts, though it was so in the state courts. That case, therefore, while a satisfactory authority upon the proposition that state laws can never regulate the mere equity practice of the federal courts, and also, as we shall see, a most important authority upon the contention that Boyle is entitled to a trial by a jury in an action at law, is not an authority upon the construction of section 916, Rev. St., for the reason that there had been no "recovery of a judgment at law," and the case, therefore, did not come within the language of that section.

Smith v. Bourbon Co., 127 U. S. 110, 8 Sup. Ct. 1043, 32 L. Ed. 73, is also cited by the defendant. It is a case where a judgment creditor

of a railroad company brought suit in equity for the purpose (1) of compelling the railroad company to assign to him its claim against the county for bonds agreed to be issued by it for stock of the railroad company, and (2) of compelling the county commissioners to issue the bonds and deliver them to the complainant to the extent of his judgment. The supreme court held that the latter right was not an equitable, but a legal, right, to be enforced by mandamus; and while, therefore, directing the retention of the bill as to the first right claimed, it adjudged as to the second that the bill should be dismissed for want of jurisdiction in equity. All of this, however, was done upon considerations which do not appear to have any direct bearing upon the questions now before us.

If we assume that section 916 applies to this case in equity, notwithstanding the difficulties we have endeavored to point out, the inquiry will be as to what is the remedy by "execution or otherwise" provided in such a case by the laws of Kentucky. As already indicated, the applicable provisions of the Kentucky Code of Practice in force in 1872 are to be found in Myers' Code in these words:

"Sec. 474. After an execution of fieri facias, directed to the county in which the judgment was rendered, or to the county of the defendant's residence, is returned by the proper officer, either as to the whole or part thereof, in substance, no property found to satisfy the same, the plaintiff in the execution may institute an action, by equitable proceedings, in the court from which the execution issued, or in the court of any county in which the defendant resides, or is summoned, for the discovery of any money, chose in action, equitable or legal interest, and all other property to which the defendant is entitled, and for subjecting the same to the satisfaction of the judgment; and in such actions, persons indebted to the defendant in the execution, or holding the money or property in which he has an interest, or holding the evidences or securities for the same, may be also made defendants.

"Sec. 475. The answers of all the defendants shall be verified by their own oath, and not by that of an agent or attorney, and the court shall enforce full and explicit discoveries, in such answers, by process of contempt.

"Sec. 476. In the action mentioned in the preceding sections, the plaintiff may have an attachment against the property of the defendant in the execution, similar to the general attachments provided for in chapter three, of title eight, without either the affidavit or bond therein required.

"Sec. 477. A lien shall be created on the property of the defendant, by the levy of the attachment, or service of the summons, with the object of the action indorsed thereon, on the person holding or controlling his property.

"Sec. 478. The court shall enforce the surrender of the money, or securities therefor, or of any other property of the defendant in the execution which may be discovered in the action, and, for this purpose, may commit to jail any defendant or garnishee failing or refusing to make such surrender, until it shall be done, or the court is satisfied that it is out of his power to do so."

Manifestly, in terms, those sections only provide for the institution "of an action, by equitable proceedings," in which certain specified things may be done. We may well doubt whether the equitable proceeding thus provided for can be made available in the federal courts when in the opinion of the supreme court in the case of Boyle v. Zacharie, 6 Pet. 658, 8 L. Ed. 527, we read the following language:

"The chancery jurisdiction given by the constitution and laws of the United States is the same in all the states of the Union, and the rule of decision is the same in all. In the exercise of that jurisdiction, the courts of the United States are not governed by the state practice; but Act Cong. 1792, c. 36, has

provided that the modes of proceeding in equity suits shall be according to the principles, rules, and usages which belong to courts of equity, as contradistinguished from courts of law. And the settled doctrine of this court is that the remedies in equity are to be administered, not according to the state practice, but according to the practice of courts of equity in the parent country, as contradistinguished from that of courts of law, subject, of course, to the provisions of the acts of congress and to such alterations and rules as in the exercise of the powers delegated by those acts the courts of the United States may from time to time prescribe."

And the following from the opinion of the court in Payne v. Hook, 7 Wall. 425, 19 L. Ed. 260, is equally strong. It is there said:

"We have repeatedly held 'that the jurisdiction of the courts of the United States over controversies between citizens of different states cannot be impaired by the laws of the states, which prescribe the modes of redress in their courts, or which regulate the distribution of their judicial power.' If legal remedies are sometimes modified to suit the changes in the laws of the states and the practice of their courts, it is not so with equitable. The equity jurisdiction conferred on the federal courts is the same that the high court of chancery in England possesses, is subject to neither limitation nor restraint by state legislation, and is uniform throughout the. different states of the Union."

Nothing can be clearer than that such is still the "settled doctrine of the court"; but we must disregard it if we hold that section 916, in its scope and purpose, embraces equitable actions. Such a course is by no means open to this court, as appears even more clearly when we read section 913, Rev. St. [U. S. Comp. St. 1901, p. 683].

Until ruled otherwise by the circuit court of appeals of this circuit in the case, cited and relied upon by the complainants, of Phelps v. Association, 50 C. C. A. 339, 112 Fed. 456, it was supposed to be settled, under the express authority of the opinion of the court of appeals of Kentucky in the case of Davidson v. Simmons, 11 Bush, 333, that not a suppletory proceeding in an action at law, but an independent and separate suit in equity, was the only sort of suit that could be brought in the state court upon a judgment under the law and practice of Kentucky. In the Phelps Case the plaintiff in an action at law in the state court had procured a personal judgment, an execution, and a return of nulla bona. Long after the time when that court had ceased to have any control over the case under the Kentucky law, the plaintiff, without notice to the defendant, filed or attempted to file an amended petition in the nature of a petition in equity in that suit at law, and thereupon the case was attempted to be transferred to the equity docket by an order to that effect also made without notice. After that was done, but still without notice, the court appointed a receiver for the defendant's property. When the receiver thus appointed attempted to get possession of the defendant's property, the latter filed its bill of complaint in this court, wherein it prayed for an injunction against his doing so. This was granted upon the ground that the state court had no right or jurisdiction to act in the premises, that the appointment of the receiver under those circumstances was utterly void, and, that being so, he was a trespasser, who had no more right than any other citizen to take possession of the property of the association. 103 Fed. 515. Upon appeal this judgment was reversed by the circuit court of appeals (50 C. C. A. 339, 112 Fed. 456), and the

case is now pending in the supreme court, where it must be determined, not whether such proceedings as occurred or were attempted in the state court would have been admissible under the general equity practice of courts of the United States, but whether they were void under the practice established by the state of Kentucky for the government of her courts. In other words, as the point there involved is practically the converse of that raised here, to wit, what was proper practice in the common-law action in the state court, the most interesting question to be decided by the supreme court on the appeal would seem to be this: Can the federal courts, under section 720, Rev. St. [U. S. Comp. St. 1901, p. 581], or otherwise, properly hold that an attempted proceeding in a state court in an action at law previously pending therein, but which had long before expended its force and died from exhaustion, and over which the state court had long before lost control, and which attempted proceeding in the common-law action was void under the state law as being outside of the power and jurisdiction of the courts of the state under its laws and practice, must nevertheless be treated as valid by the federal courts, because the attempted proceeding might be justifiable upon the general principles of equity or other practice in the courts of the United States or of states other than that wherein the common-law action had been instituted, and upon this latter test, rather than the former, to determine the validity of the action of the state judge in appointing a receiver without notice in a proceeding not at the time pending in his court? The opinion of the circuit court of appeals is, of course, binding upon this court; but this statement of the case has been made to clearly show that, while the researches of the learned judge who rendered the opinion throw most valuable light upon equity practice generally, that opinion cannot be regarded as construing section 916, Rev. St., which, indeed, does not seem to have been mentioned.

But, without going further into this phase of the case, it seems to the court, after a very attentive consideration of the subject, that while section 916, Rev. St., applies to remedies and actions at law, congress never intended by that legislation to adopt to any extent the mere equity practice of the states. Otherwise, instead of being uniform throughout the United States, the federal equity practice should be conformed to the various and discordant local laws. Strong support is also given to this conclusion by the opinion of Judge McAllister in Fed. Cas. No. 2,266 (Byrd v. Badger, 4 Fed. Cas. 942). If, however, we assume the contrary, we shall not, except in the one essential feature presently to be noticed, reach results very different from those which come from the established equity practice of the United States. To a very great extent the practice, or, at all events, the rights of judgment creditors are essentially the same in both jurisdictions. Respecting the provisions of Kentucky law embraced in Myers' Code, and covering sections 474 to 478, inclusive, the court of appeals of Kentucky has held that "the action by equitable proceeding" mentioned in section 474 is the only sort of suit that can be brought on a judgment in this state. Davidson v. Simmons, 11 Bush, 333. In other words, that court, in construing the Kentucky law, holds that that is the only supplementary proceeding authorized where there has

been a personal judgment and a return of nulla bona. The Code expressly provides for the creation of a lien either by an attachment or the service of a summons with the indorsement thereon of the object of the suit. The Code also provides that persons owing the judgment debtor may be made defendants in the action. This, then, is the equitable procedure established by the state of Kentucky. It is by an independent action, and the remedy is exclusive of all others which seek to subject equitable assets to a judgment. Davidson v. Simmons, supra. By the procedure thus authorized the laws of the state of Kentucky provide a means for subjecting to judgment debts the intangible assets of the debtor. A failure to provide some means to subject that class of property to the payment of debts would be a just reproach to the legislation as well as the jurisprudence of the state. Kentucky's way of doing it is prescribed by the Code provisions referred to. While that mere procedure for doing it cannot be, and, as I think, has not been, imposed upon the equity practice of the federal courts, we shall find, we think, that, except in one essential respect, it differs only in detail from what is available here. There are certain cases under the Kentucky Code where, if a debtor of the judgment debtor is made a defendant in the suit in equity authorized by the Code, and if in the petition the indebtedness is clearly stated and identified, a personal judgment for the amount may be rendered against him in that suit in favor of the judgment creditor, with an injunction against its collection by the judgment debtor. Joyce v. O'Toole, 6 Bush, 32. This can be done if the indebtedness is not disputed; but, if there is a denial of the indebtedness, all that the plaintiff acquires at this point in his suit is an equitable or pendente lite lien upon the demand. The Code, however, apparently stops short of providing, at least in express terms, for any further proceeding in case the alleged indebtedness is disputed. In such contingency no positive provision of the Code meets the case. In this connection the Kentucky practice is not altogether clear, and the complainants might soon be, if, indeed, they are not now, confronted with that difficulty if the Kentucky Code provisions are applicable to their case.

But, passing this, it may be said that, while upon demurrer to the bill of complaint the well-pleaded averments are taken as true, it cannot be fairly claimed that the statements of this bill explicitly or clearly show an indebtedness by Boyle to the judgment debtors. On the contrary, it shows that several questions must be settled before the conclusion can be reached that he in fact owes it to them, instead of the different entity known as the Geo. T. Wood & Co. corporation. Can this question, as against Boyle, be settled in an equity cause, or must it be determined by a suit at law? These are most essential inquiries, and bring us to the point where we must determine the exact rights of the complainants upon established principles of legal, as well as equity, practice and the allegations of their bill of complaint. This, we think, it is not difficult to do. It has long been the practice for a creditor, who has exhausted his remedies at law by procuring a personal judgment and an unavailing execution, to file what has always been called a "creditors' bill" to obtain from his debtor a discovery of his assets and for the subjection thereof to the payment of the judg-

ment. The relief thus sought can be obtained by compelling the debtor to surrender to the court such of his property as he has in his possession or under his control, and, if necessary, by the appointment of a receiver, with authority to sue for and collect any demands or choses in action that may be due to the judgment debtor. High, Rec. § 99 et seq.; 6 Enc. Pl. & Prac. 593, 466. Doubtless a lien (sometimes called an "equitable levy") can be had upon the choses in action by making the persons from whom they are due parties to the bill (Commissioners v. Earle, 110 U. S. 710, 4 Sup. Ct. 226, 28 L. Ed. 301); but the action of the parties to the previous action at law in which a judgment was rendered, on the one hand, and the appointment of a receiver and the authority given him on the other, cannot and should not affect the rights of any third person, even if he is a debtor of the judgment debtor. The rights of such third person cannot be lessened or injured by the matters referred to. In short, his rights, especially that of having a jury pass upon his case, cannot in any manner be impaired or taken from him by any contention or proceeding between the judgment creditor and the judgment debtor. Nor is the force of these suggestions lessened by the fact that, if such third party is duly impleaded, the judgment creditor may secure an equitable lien upon whatever he may owe the judgment debtor, when that question, if controverted, shall have been settled or adjudicated at law. The process by which such a lien is properly created is a species of garnishment, because it is a warning to the third party not to pay anything he owes except as the court orders; but it in no way undertakes to settle any points of controversy about the alleged debt between the third party and his alleged creditor.

3. It may be technically true that the bill in this case, in the strict sense, is lacking in some of the qualities of a bill of discovery, because answers under oath are waived (Huntington v. Saunders, 120 U. S. 80, 7 Sup. Ct. 356, 30 L. Ed. 580); but it is certainly a creditors' bill, and we doubt if the objection is one with which Boyle is concerned on the hearing of the demurrer, especially as the bill only states argumentatively, and not positively, that he is indebted to the judgment debtors, and as he cannot be prejudiced by not being required to answer under oath as to whether he is indebted to the judgment debtors. If the latter waive the objection, and make discovery of demands due them, or of other assets belonging to them, such assets, if available for complainants at all, would be quite as much so under those circumstances as if answer under oath had not been waived. No one but themselves is bound by their answers. Other defendants may answer as advised; but, if Boyle really owes the judgment debtors, such indebtedness, when properly ascertained, may be subjected to their judgment in this proceeding, and, if Boyle is protected against a second demand for it, it is quite immaterial to him who gets the money when it is paid by him. If Boyle should answer, admitting the indebtedness, he would be but little concerned about the future proceedings; but whether his answer, if he made one, denying all indebtedness to the judgment debtors, would, at least for the present, be conclusive in this action, is not a question which can now be determined, although it is one about which the authorities greatly differ. But,

assuming that it should not be so regarded, his contention is that neither under the Kentucky law nor under the equity practice of this court can the question of his liability to the firm of Geo. T. Wood & Co. upon a purely legal demand be determined in this suit in equity, where he has no right to have the matter tried by a jury. Undoubtedly, if he disputes it, the question of whether he owes the money to them is one of purely legal cognizance. The remedy at law upon such a demand is plain, adequate, and complete. In any controversy with them respecting it, is he not, at least in this court, whatever might be the case under the Kentucky Code, by manifest constitutional right, entitled to have the issue tried by a jury and not left to the mere discretion of the judge as to framing an issue to be tried out of chancery? Under the seventh article of amendments to the constitution of the United States the answer to the question is obvious. Can this constitutional right be affected or altered by the fact that he might owe, or be said to owe, money to the complainants' debtors? We think certainly not. The doctrine upon which cases like Scott v. Neely, 140 U. S., 11 Sup. Ct., 35 L. Ed., proceeds is largely that a creditor cannot, by going into equity in the first instance, deprive a defendant of his constitutional right of having the issues upon a purely legal demand tried by a jury in the common-law tribunals of the United States; and the reach of that doctrine clearly embraces cases like this, because it cannot be that a defendant situated like Boyle should more easily be deprived of that right than would be a defendant situated like the one in Scott v. Neely. So that, if the Kentucky Code applies, it must be subject to that qualification. Hence the inquiries just suggested must be answered in the negative, and it must result that the only rights the complainants have in this action against Boyle are the right to an answer from him as to whether he is indebted to the judgment debtors or either of them, and the right to an equitable lien ("equitable levy," as it is sometimes called) upon any indebtedness of his to the judgment debtors, such lien to become effective and to be enforced when such indebtedness, if denied, shall have been ascertained in an action at law. One essential step in the effectuation of such a lien or levy in this suit, to which both Boyle and said judgment debtors are parties defendant, if Boyle denies indebtedness, is to appoint a receiver, clothed with authority, in his own name jointly with that of the judgment debtors, to sue for and collect the indebtedness, if any, due to said judgment debtors, the proceeds to be accounted for by him in this suit. These results cannot be affected or changed by the allegations in the bill that Boyle is fraudulently claiming that his indebtedness, if any, is to the corporation, and not to the judgment debtors, because the suit at law by the receiver would develop whether or not he owes the judgment debtors, and, if he did not, then that phase of this suit might be ended, or such ulterior steps taken as might be proper.

4. It is also contended that the bill is multifarious. Courts in modern times have not been so strict as formerly in enforcing this objection, but have not hesitated to do so in cases plainly demanding it. When the bill in this case is analyzed and given the most liberal construction, it will be found to seek (1) a discovery of assets from the

judgment debtors, (2) a personal judgment against the defendant Boyle upon a mere money demand alleged to be due from him to the judgment debtors, and (3) a decree that the alleged pretense by Boyle that any indebtedness from him in the premises is due to the corporation defendant, and not to the judgment debtors, is fraudulent. In the opinion of the court it has jurisdiction of the bill for the purpose of discovering the assets of the judgment debtors and for subjecting them to the judgment of the complainants. The court is also of opinion that there is matter in the bill sufficient to support a decree, under the prayer for general relief, for the taking of all necessary steps competent in a proceeding in equity to accomplish the two objects just indicated, and consequently that the demurrer to the bill upon those grounds and to that extent should be overruled and disallowed. As this is a creditors' suit, large latitude should be permitted, particularly as against judgment debtors, even if it does verge upon multifariousness; but it nevertheless seems to the court to be very clear that the bill goes beyond allowable limits as against Boyle. The peculiar aspect given to the bill will make it necessary, if the court fully grant its prayers, (1) to enforce a discovery as against the judgment debtors, (2) to adjudge that the alleged pretense of Boyle that his creditor is the corporation and not the partnership is fraudulent, and (3) to render a personal judgment against Boyle in favor of the complainant, although there is no privity between them. So that the court must take three or more distinct steps, some of a legal and others of an equitable nature, to afford the complete relief asked. Viewed from the standpoint of the complainants and their debtors, that fact might raise no insuperable difficulty; but the strict rights of Boyle are those which we must determine under the stress of his demurrer. As already indicated, it seems to the court that even as to him the action is well brought, so far as it seeks a discovery of assets of the judgment debtors and their subjection to complainants' demand, and also for acquiring an equitable lien or levy upon such assets, including any indebtedness of Boyle to the judgment debtors, but that the character of the specific relief sought against Boyle in the second prayer of the bill makes that pleading multifarious, and not only so, but as to that part of the relief sought the court is without jurisdiction in equity.

Upon those grounds and to that extent the demurrer to the bill is allowed and sustained, and, following the practice suggested by the action of the court in Smith v. Bourbon Co., 127 U. S., 8 Sup. Ct., 32 L. Ed., the bill should be dismissed as to that part of the relief sought and retained as to the others; but, in view of the intimate connection between what is sought by prayer No. 2 and prayer No. 3, it seems proper that all further proceedings in the case as to the latter should be suspended until there has been opportunity to settle, either in a court of law or by the agreement of the parties, the question of who is the creditor of Boyle in respect to the transactions alluded to in the fourth and fifth paragraphs of the bill. The complainants are given leave to so amend their bill as to remove the objections thereto pointed out in this opinion, and by omitting therefrom prayers for any relief against Boyle, except such as may be appropriate under the views herein expressed.